IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-02859-PAB-MEH

CROCS, INC.,

      Plaintiff,

v.

JOYBEES, INC., a Colorado corporation, and
KELLEN McCARVEL,

      Defendants.

---

## ORDER

---

    This matter is before the Court on Crocs, Inc.'s Motion to Dismiss Defendant Joybees LLC's Counterclaims I-VI and Strike Affirmative Defenses [Docket No. 19] pursuant to Fed. R. Civ. P. 12(b)(1). Defendant Joybees, Inc. ("Joybees") responded [Docket No. 27], and Crocs, Inc. ("Crocs") replied [Docket No. 31]. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND

    Plaintiff brings this case against Kellen McCarvel, a former Crocs employee, and Joybees. Docket No. 1 at 1, ¶ 1. Plaintiff alleges that Mr. McCarvel "systematically downloaded and copied to his personal devices thousands of Crocs' proprietary documents that were essentially a blueprint to start a competitive company" shortly before he left his position at Crocs. *Id.* at 1-2, ¶ 2. Mr. McCarvel then became the chief executive officer of Joybees, a Crocs competitor. *Id.* at 2, ¶ 3. Crocs alleges that Joybees makes an "overwhelmingly similar product" to Crocs's products. *Id.* Crocs

alleges that the misappropriated documents provided Joybees, "a small start-up company whose CEO was formerly only a mid-level Crocs manager, with a blueprint to create a competitive business using the fruits and labors of the millions of dollars that Crocs invested to become the industry leader in this line of footwear." *Id.* at 4, ¶ 10.

The complaint brings ten claims: (1) theft of trade secrets; (2) violation of the Colorado Trade Secrets Act; (3) common law unfair competition; (4) conversion and civil theft; (5) unjust enrichment; (6) breach of the duty of loyalty against Mr. McCarvel; (7) trademark infringement against Joybees; (8) false designation of origin/unfair competition under the Lanham Act against Joybees; (9) trademark dilution against Joybees; and (10) unfair and deceptive trade practices against Joybees. *Id.* at 30-43, ¶¶ 114-99.

On November 23, 2021, Joybees filed an answer and counterclaims. *See* Docket No. 9. Joybees bring seven counterclaims for declaratory judgment of non-infringement. *Id.* at 33-38, ¶¶ 58-87. Three are for non-infringement of trademarks and four are for non-infringement of patents. *See id.* On December 14, 2021, plaintiff filed a motion to dismiss six of the seven counterclaims due to lack of subject matter jurisdiction and to strike defendants' affirmative defenses. Docket No. 19. Joybees responded, Docket No. 27, and plaintiff replied.[1] Docket No. 31.

---

[1] The portion of plaintiff's motion that moves to strike affirmative defenses states that it is directed at both Joybees's and Mr. McCarvel's affirmative defenses. Docket No. 19 at 2. Mr. McCarvel states that he joins in Joybees's response to that portion of the motion, but does not concede that the motion was properly directed towards him. Docket No. 27 at 14 n.7. While the Court agrees with defendants that plaintiff's titling of the motion sows confusion, it is clear the motion is directed to the affirmative defenses asserted by both defendants. Accordingly, the Court considers the affirmative defenses arguments with respect to both.

## II.  LEGAL STANDARD

A motion under Rule 12(b)(1) is a request for the court to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A plaintiff generally bears the burden of establishing that the court has jurisdiction.  *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974).  When the court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1).  *See Jackson v. City & Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial attacks and factual attacks.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  A facial attack questions merely the sufficiency of the pleading. *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack, the court takes the allegations in the complaint as true, as in a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Id.*  If those allegations establish a federally cognizable claim, jurisdiction exists.  *Id.*

In contrast, if a Rule 12(b)(1) motion "challenge[s] the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court[,] '[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  On a factual

attack, no presumption of truthfulness applies to the complaint's allegations. *Holt*, 46 F.3d at 1003. Instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* In making its decision, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*, 271 F.3d at 1225 (citation omitted).

Unless it is shown that no amendment of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. *See Bruzga v. Cnty of Boulder*, 795 F. App'x 599, 604-04 (10th Cir. 2020) (unpublished) (stating that dismissal based on lack of standing should be without prejudice); *see also* Fed. R. Civ. P. 41(b).

## III.  ANALYSIS

### A.  Counterclaims I-VI[2]

Plaintiff argues that there is no controversy between plaintiff and Joybees with respect to Counterclaims I through VI because plaintiff has not alleged that Joybees infringed on any of these patents or trademarks.[3] *See* Docket No. 19 at 3-4. Accordingly, argues plaintiff, the Court lacks subject matter jurisdiction over these counterclaims. *Id.* The counterclaims are for non-infringement of Crocs's trademarks

---

[2] Both parties use Federal Circuit caselaw for the trademark counterclaims in addition to the patent counterclaims, and the Court accordingly does the same.

[3] Plaintiff does not seek dismissal of Counterclaim VII because plaintiff does contend that Joybees is infringing on this trademark. *See* Docket No. 19 at 3 n.1.

and patents as follows:

- U.S. Trademark Registration No. 5,149,328 (the "'328 Mark") (Counterclaim I)
- U.S. Trademark Registration No. 5,273,875 (the "'875 Mark") (Counterclaim II)
- U.S. Patent No. D632,465 S (the "'465 Patent") (Counterclaim III)
- U.S. Patent No. 7,146,751 B2 (the "'751 Patent") (Counterclaim IV)
- U.S. Patent No. 6,993,858 B2 (the "'858 Patent") (Counterclaim V)
- U.S. Patent No. D517,789 (the "'789 Patent") (Counterclaim VI)

"In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The preceding language of the Declaratory Judgment Act implicates two separate considerations.  The first is whether there is "a case of actual controversy" between the parties.  Once a district court satisfies itself that an "actual controversy" exists, it then undertakes to employ the permissive language of the Declaratory Judgment Act—that a district court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  *Id.*

### 1. *Actual Controversy*

#### a. **Legal Standard**

The Declaratory Judgment Act allows a defendant to "counterclaim for a declaration of invalidity and noninfringement . . . [so that] the defendant is protected against the possibility that the [rights holder] will dismiss the suit or that the infringement action will not resolve all of the issues between the parties."  *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300–01 (Fed. Cir. 2010) (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2761 (3d ed.

1998).

"The Declaratory Judgment Act's requirement of 'a case of actual controversy' simply affirms this Constitutional requirement, having long been interpreted as referring to any case and controversy that is justiciable under Article III." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). "For there to be a case or controversy under Article III, the dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' 'real and substantial,' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 1335–36 (quoting *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007)) (alterations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

While "[a]ll of the circumstances are considered in determining the existence of a case or controversy[,]" the "controversy cannot be based on a fear of litigation over future products." *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 783 (Fed. Cir. 2019) (unpublished) (citing *MedImmune*, 549 U.S. at 127); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (citation omitted). However, an actual suit affirmatively asserting the claims is not a requirement for an Article III case or controversy. *Cardinal Chem. Co. v. Morton Int'l, Inc*., 508 U.S. 83, 95 (1993) ("In patent litigation, a party may satisfy th[e] burden, and seek a declaratory judgment,

6

even if the patentee has not filed an infringement action."). The Supreme Court in *MedImmune* held that even a "reasonable apprehension of suit" is not a requirement for Article III jurisdiction. 549 U.S. at 132 n.11; *see also Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 837 F.3d 1249, 1252 n.1 (Fed. Cir. 2016) (recognizing that a "reasonable apprehension of imminent suit" is no longer a prerequisite although it may be a factor that can satisfy the Article III controversy requirement).

In case law following *MedImmune*, the Federal Circuit has explained that, in the context of patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity."[4] *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Off.*, 689 F.3d 1303, 1318 (Fed. Cir. 2012) (internal citation omitted), *rev'd in part on other grounds by Ass'n for Molecular Pathology v. Myriad Genetics, Inc*., 569 U.S. 576 (2013).

In order to meet the affirmative act requirement, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and

_____

[4] In *Prasco*, the Federal Circuit noted that the second prong of the test, which the Supreme Court rejected in *MedImmune*, namely, "whether there has been potentially infringing activity or meaningful preparation to conduct potentially infringing activity, 'remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate.'" 537 F.3d at 1336 n.4. The Tenth Circuit held that *MedImmune* "retired from [its] status as [a] touchstone[] of declaratory judgment jurisdiction in intellectual property cases" whether the declaratory plaintiffs had produced or were prepared to produce the product in question. *Surefoot LC v. Sure Foot Corp*., 531 F.3d 1236, 1242 n.3 (10th Cir. 2008). However, the court stated that this inquiry could still prove relevant in determining whether a case or controversy exists in some cases. *Id.*

the other party's product line.' [But] [h]ow much more is required is determined on a case-by-case analysis." *3M Co. v. Avery Dennison Corp*., 673 F.3d 1372, 1378–79 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)).  "Generally, an affirmative act by the patentee is 'conduct that can be reasonably inferred as demonstrating intent to enforce a patent.'" *UCP Int'l Co. Ltd. v. Balsam Brands Inc*., 787 F. App'x 691, 698 (Fed. Cir. 2019) (unpublished) (quoting *Hewlett-Packard*, 587 F.3d at 1363).

In *Ebates Performance Marketing, Inc. v. MyMail, Ltd.*, the court listed factors that the Federal Circuit and Supreme Court have generally considered in determining whether the patentee has taken an affirmative act:

> (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy.

2021 WL 121130, at *6 (N.D. Cal. Jan. 13, 2021) (citing *Cepheid v. Roche Molecular Systems, Inc*., 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013)).  The Court reviews the patent and the trademark counterclaims separately.

### b.  Patent Counterclaims

Several factors indicate that subject matter jurisdiction exists over the patent

counterclaims.  Regarding the first factor, the strength of threatening language in

communications between the parties, Crocs sent Mr. McCarvel a letter on July 9, 2020

regarding the information Mr. McCarvel took from Crocs upon his departure.  *See*

Docket No. 19-2.  The letter states:

> Crocs is continuing to assess the damage that you, Mr. Belitz, and Mr.
> Cosper have caused as a result of your theft of Crocs' confidential
> information and Joybees' use of that information to unfairly compete with
> Crocs.  Crocs is also continuing to monitor Joybees' business practices
> and product lines for other issues, including any potential intellectual
> property infringement.  Crocs intends to pursue all of its legal rights to
> prevent any misappropriation, unfair competition, or infringement by
> you, Mr. Belitz, Mr. Cosper, and Joybees, including seeking appropriate
> injunctive relief and damages.

*Id.* at 4.  While much of the letter concerns the unrelated matter of misappropriation of

confidential information, the letter also indicates that Crocs will be monitoring Joybees's

product line for intellectual property infringement and that Crocs intends to pursue "all of

its legal rights" with respect to any Joybees infringement.  *Id.*  The letter does not

identify specific Crocs' patents that Crocs alleges Joybees violates, but Crocs cannot

defeat a finding of a case or controversy "simply by the stratagem of a correspondence

that avoids the magic words such as 'litigation' or 'infringement.' . . .  [I]t is implausible

(especially after *MedImmune* and several post *MedImmune* decisions from this court) to

expect that a competent lawyer drafting such correspondence for a patent owner would

identify specific claims, present claim charts, and explicitly allege infringement."

*Hewlett-Packard*, 587 F.3d at 1362.

Regarding the fourth factor, while there is no litigation between the parties other than this case, Crocs alleges that Joybees's use of Crocs's name constitutes trademark infringement, false designation of origin, and dilution.  Docket No. 1 at 4, ¶ 11.  The complaint does not allege infringement of the patents in Counterclaims III to VI, but it does make numerous allegations that Joybees is a "knockoff" product.  For example, the complaint alleges that Joybees has attempted to capitalize on Crocs's investment in its trademark "by falsely implying that its knockoff products are associated with Crocs and Crocs' shoes."  *Id.* at 24, ¶ 84.  Crocs goes on to allege that "Joybees knockoff products include, but are not limited to, Joybees' 'Kid's Splash Sneaker,' 'Modern Clog,' 'Kids' Active Clog,' 'Varsity Clog', and 'Work Clog' products and colorable imitations thereof.  On information and belief, Joybees sells these and other shoes by drawing affiliation to Crocs despite the absence of any association between Joybees and Crocs."  *Id.* at 27, ¶ 100.  Contrary to Crocs's view, use of the term "knockoff" is typically associated with improper copying.  This weighs in favor of finding an affirmative act.

For factor nine, Crocs has refused to give assurances that it will not enforce the patents against Joybees.  *See* Docket No. 31 at 2.   The Federal Circuit has held that, although not dispositive, "a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination [of declaratory judgment jurisdiction]."  *Prasco*, 537 F.3d at 1341; *see Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1381 (Fed. Cir. 2011) (concluding that, under the circumstances, the patentee's refusal to grant a covenant not to sue provided "a level of additional support for our finding that an actual controversy exists").

For factor 11, Crocs has extensive familiarity with Joybees before suit.  Crocs's

letter to Mr. McCarvel regarding his alleged theft of trade secrets is dated July 9, 2020.
Docket No. 19-2 at 2.  Crocs filed this lawsuit on October 22, 2021.  *See* Docket No. 1.

Not every factor the *Ebates* court noted exists in this case.  However, the *Ebates*
list represents factors that the Federal Circuit and Supreme Court have considered in
various cases evaluating whether a patentee has taken an affirmative act, 2021 WL
121130, at *6, and do not represent a balancing test.  The presence of four of the
factors, especially in light of the communications in factor one, show an affirmative act
by Crocs related to the enforcement of its patent rights.  *See UCP Int'l*, 787 F. App'x at
698 ("Generally, an affirmative act by the patentee is 'conduct that can be reasonably
inferred as demonstrating intent to enforce a patent.'").  Additionally, the Court finds that
Joybees has engaged in "meaningful preparation to conduct potentially infringing
activity."  *Ass'n for Molecular Pathology*, 689 F.3d at 1318.  Joybees produces products
that Crocs considers to be "knockoffs," namely, the "Kid's Splash Sneaker," "Modern
Clog," "Kids' Active Clog," "Varsity Clog", and "Work Clog."  Docket No. 1 at 27, ¶ 100.
In the end, the analysis is whether, "under all the circumstances, . . . there is a
substantial controversy, between parties having adverse legal interests, of sufficient
immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*,
549 U.S. at 127.  The Court finds that there is and will deny this portion of Crocs's
motion.

### b.  Trademark Counterclaims

Factors one, four, nine, and eleven, noted above with respect to the patent
counterclaims, also weigh in favor of finding a case or controversy for Joybees's

11

trademark counterclaims.  The letter Crocs sent Mr. McCarvel speaks to infringement of "intellectual property" and does not distinguish between patents and trademarks.  *See* Docket No. 19-2 at 4.  The litigation history and accusations of trademark infringement relevant to factor four, above, are also relevant to the trademark counterclaims.  Crocs's refusal to give assurances not to sue are equally applicable to the trademarks.  And Crocs's familiarity with Joybees prior to suit is the same for both its trademark and patent claims.

Additionally, regarding the fifth factor, Crocs has a history of enforcing the two trademarks at issue through its International Trade Commission action ("ITC action") against third parties.  *See* Docket No. 9 at 29-31, ¶¶ 27-41.  The Court finds that it has subject matter jurisdiction over the trademark counterclaims for the same reasons as discussed above.  *See MedImmune*, 549 U.S. at 127 ("[U]nder all the circumstances, . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").  The Court will deny this portion of plaintiff's motion.

### 2. Prudential Jurisdiction

In the alternative, Crocs asks the Court to decline to exercise prudential jurisdiction over the counterclaims.  Docket No. 19 at 11-13.  A district court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  A district court must consider several case-specific factors when deciding whether to

exercise its authority to issue a declaratory judgment.  *Surefoot*, 531 F.3d at 1240.

These factors, referred to as the "*Mhoon* factors," include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id*. at 1248 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).[5]  These various "equitable, prudential, and policy arguments" weigh on the court's discretionary decision to either entertain or dismiss a declaratory judgment claim.  *MedImmune*, 549 U.S. at 136.

Looking to the *Mhoon* factors, the Court finds that it is appropriate to exercise its discretion to hear Joybees's declaratory judgment counterclaims.  *See Mhoon*, 31 F.3d at 983.  A declaratory action would settle whether Joybees's products infringe on the two trademarks and four patents.  Resolving Counterclaims I to VI will also clarify the legal relationship between the Crocs and Joybees products.  Crocs's arguments that Joybees is engaging in "procedural fencing" by not joining the ITC action are unpersuasive.  The ITC action involves only the two trademarks and does not include

---

[5] Crocs also cites to a sixth factor the court considered in *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170 (D. Colo. 2018).  Docket No. 19 at 12.  In *TBL Collectibles*, the Court noted that courts in the District of Colorado have "additionally looked to a sixth factor set forth in *Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo. 1997)—whether the declaratory judgment action is 'independent of and separable from the underlying action.'"  285 F. Supp. 3d at 1195.  The Court declines to consider this factor, although most of the counterclaims are of a different character than Crocs's claims, because these counterclaims are based on patent and trademark law, rather than Colorado law.

the four patents.  Additionally, Crocs could have chosen to add Joybees to the ITC action, but did not do so.  There is no issue of state court friction, and the Court finds there is no other remedy that is more effective.  Accordingly, the Court finds that the *Mhoon* factors weigh in favor of exercising jurisdiction over Joybees's counterclaims. The Court will deny this part of plaintiff's motion.

### B.  Affirmative Defenses

Plaintiff asks the Court to strike defendants' affirmative defenses under Rule 12(f). Docket No. 19 at 13-15.  Plaintiff argues that defendants raise six single-sentence defenses that are conclusory and lacking factual support.  *Id.*  Defendants oppose the request.  Docket No. 27 at 14-15.

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions under Rule 12(f) are viewed with disfavor, both because striking a portion of a pleading is a drastic remedy and because such motions are often used as a dilatory or harassing tactic. Wright et al., *supra*, § 1380; *see, e.g.*, *Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006) (citing *FDIC v. Isham*, 782 F. Supp. 524, 530 (D. Colo. 1992)); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("Striking a party's pleading . . . is an extreme and disfavored measure."); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) ("Motions to strike are generally disfavored because they are often used as delaying tactics." (quotation omitted)).  Thus, motions to strike are typically granted only when the allegations have no bearing on the controversy and the movant can show prejudice.  *Sierra Club v. Young Life Campaign,*

*Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).  "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance."  *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty.*, 423 F. Supp. 3d 1106, 1108 (D. Colo. 2019) (quoting *Isham*, 782 F. Supp. at 530); *see also S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006) ("A motion to strike an affirmative defense is adjudicated under the same standard as a motion to dismiss; namely, the Court must strike the defense only if it cannot be maintained under any set of circumstances.").  An affirmative defense "should not be stricken if there is any real doubt about its validity, and the benefit of any doubt should be given to the pleader."  *Sender*, 423 F. Supp. 2d at 1163 (citation, alterations, and internal quotation marks omitted).  Whether to strike a portion of a pleading is within the trial court's discretion.  *Scherer v. Dep't of Educ.*, 78 F. App'x 687, 689 (10th Cir. 2003) (unpublished) (reviewing a district court's ruling on a motion to strike for abuse of discretion); *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1030–31 (D. Colo. 2014); *see also* Fed. R. Civ. P. 12(f) (denoting only that allegations that are subject to Rule 12(f) "may" be stricken).

Courts in this district have held that the requirement that a complaint set forth sufficient factual matter allowing for a reasonable inference that the pleader is entitled to relief, as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), does not apply to affirmative defenses.  *See, e.g.*, *Alarid v. Biomet, Inc.*, No. 14-cv-02667-REB-NYW, 2015 WL 6376171, at *2 (D. Colo. Sept. 22, 2015); *see also Malibu Media, LLC v. Benson*, No. 13-cv-02394-WYD-MEH, 2014 WL 2859618, at *2 (D. Colo. June 20, 2014) (holding that "[a]n

affirmative defense is sufficient if stated 'in short and plain terms' pursuant to Rule 8(b)(1)(A), and if the movant fails to demonstrate that the defense cannot succeed under any circumstances"); *Holdbrook v. SAIA Motor Freight Line, LLC*, No. 09-cv-02870-LTB-BNB, 2010 WL 865380, at *2 (D. Colo. Mar. 8, 2010) (finding it "reasonable to impose stricter pleading requirements on a plaintiff who has significantly more time to develop factual support for his claims than a defendant who is only given 20 days to respond to a complaint and assert its affirmative defenses" and concluding that not holding an affirmative defense to the Rule 8(a)(2) standard articulated in *Twombly* and *Iqbal* was "the better-reasoned approach . . . particularly in light of the disfavored status of motions to strike."); *cf. Unger v. U.S. W., Inc.*, 889 F. Supp. 419, 422 (D. Colo. 1995) ("An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance.").

Federal Rule of Civil Procedure 8(c), which discusses affirmative defenses, was modeled after the "then existing English and New York provisions," yet the rule "differs from both the common law and code practice in that it makes no attempt to define the concept of affirmative defense."  Wright et al., *supra*, § 1270.  "Rather, [Rule 8(c)] obligates a defendant to plead affirmatively any of the eighteen listed defenses he or she wishes to assert; this is necessary even though some of them were not considered to be pleas by way of confession and avoidance at common law."  *Id.*  "An affirmative defense . . . is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven."  *Medina v. Cath. Health Initiatives*, No. 13-cv-01249-REB-KLM, 2015 WL 13614128, at

*1 (D. Colo. May 13, 2015) (*Lane v. Page*, 272 F.R.D. 581, 601 (D.N.M. 2011)).  Black's

Law Dictionary defines "affirmative defense" as "[a] defendant's assertion of facts and

arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the

allegations in the complaint are true."  *Defense*, Black's Law Dictionary (11th ed. 2019);

*see also United States v. $114,700.00*, No. 17-cv-00452-CMA-GPG, 2017 WL

8792806, at *1 (D. Colo. Dec. 8, 2017) ("Affirmative defenses are generally those

which, when a portion of the complaint is agreed to be true, still constitute a defense to

the claimed conduct."), *report and recommendation adopted*, 2018 WL 655040 (D.

Colo. Feb. 1, 2018).  "It is the defendant's burden to plead an affirmative defense."

*Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (citing *Gomez v.

Toledo*, 446 U.S. 635, 640 (1980) ("[T]he burden of pleading [affirmative defenses]

rests with the defendant."); *Ghailani v. Sessions*, 859 F.3d 1295, 1306 (10th Cir. 2017)

(the complaint need not anticipate affirmative defenses)).

### 1.  First Affirmative Defense

Defendants' first affirmative defense is that "[t]he Complaint, and each and every

count, allegation, and prayer for relief set forth therein, fails to state a claim upon which

relief can be granted against" defendants.  Docket No. 9 at 22, ¶ 1; Docket No. 11 at

24, ¶ 1.  Failure to state a claim is not an affirmative defense.  *See, e.g.*, *Medina*, 2015

WL 13614128, at *1.  As the Court explained previously, an affirmative defense "does

not negate the elements of the plaintiff's claim, but instead precludes liability even if all

of the elements of the plaintiff's claim are proven."  *Id.*  An argument that the plaintiff

failed to state a claim does seek to negate the elements of the plaintiff's claim.  It,

therefore, is not an affirmative defense.  *See A1 Garage Door Serv., LLC v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874, at *3 (D. Colo. Mar. 30, 2022) (finding that failure to state a claim is not an affirmative defense); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof [as to an element plaintiff is required to prove] is not an affirmative defense."); *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."); *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) ("[D]efenses [which] negate an element of the plaintiff's prima facie case . . . are excluded from the definition of affirmative defense.").  The Court will therefore strike this defense.

### 2. Second Affirmative Defense

Defendants' second affirmative defense is that "[p]laintiff's claims are barred and/or limited by one or more of the equitable doctrines of laches, waiver, equitable estoppel, and unclean hands."  Docket No. 9 at 22, ¶ 2; Docket No. 11 at 24, ¶ 2.  The Court finds that this affirmative defense is sufficiently pled "'in short and plain terms' pursuant to Rule 8(b)(1)(A)."  *See Malibu Media*, 2014 WL 2859618, at *2.  This affirmative defense would also "preclude[] liability even if all of the elements of the plaintiff's claim are proven."  *Medina*, 2015 WL 13614128, at *1.  The Court will therefore deny the motion to strike defendants' second affirmative defense.  *See A1 Garage Door*, 2022 WL 952874, at *4, *6 (finding that unclean hands is an affirmative defense and denying motion to strike).

18

### 3.  Third Affirmative Defense

Defendants' third affirmative defense is that "[p]laintiff's claims are barred and/or limited by its failure to mitigate its damages."  Docket No. 9 at 22, ¶ 3; Docket No. 11 at 24, ¶ 3.  This is an affirmative defense and plaintiff's argument is without merit because, as the Court has explained, there is no heightened pleading burden for affirmative defenses, and a short and plainly pled affirmative defense is sufficient.  *See Malibu Media*, 2014 WL 2859618, at *2.  Moreover,

> A handful of courts have been confronted with the issue of whether a defendant's mere allegation that "plaintiff failed to mitigate damages" is sufficient under the pleading requirements of Rule 8.  These courts have typically held that a generalized statement, such as the one used in the instant case, meets defendant's pleading burden with respect to the affirmative defense of damage mitigation.

*Bd. of Trs. of San Diego Elect. Pen. Tr. v. Bigley Elec., Inc.*, 2007 WL 2070355, at *3 (S.D. Cal. July 12, 2007).  The Court will deny plaintiff's motion to strike this affirmative defense.  *See A1 Garage Door*, 2022 WL 952874, at *5 (denying motion to strike affirmative defense of failure to mitigate).

### 4.  Fourth Affirmative Defense

Defendants' fourth affirmative defense is that "[a]ny damages suffered by [p]laintiff are caused by its own acts or omissions, including, without limitation, its failure to mitigate damages."  Docket No. 9 at 22, ¶ 4; Docket No. 11 at 25, ¶ 4.  This satisfies Rule 8 and plaintiff has not shown that including this defense, even if it is redundant, prejudices plaintiff.  *See Sierra Club*, 176 F. Supp. 2d at 1086; *Sender*, 423 F. Supp. 2d at 1164 ("Most important, redundant allegations need not be stricken if their presence in the pleading cannot prejudice the adverse party." (quotation and alteration omitted)).

The Court therefore will not strike this affirmative defense.  *See A1 Garage Door*, 2022 WL 952874, at *5 (denying motion to strike affirmative defense of failure to mitigate).

### 5. Fifth Affirmative Defense

Defendants' fifth affirmative defenses are that "Joybees has at all times acted in good faith," Docket No. 9 at 23, ¶ 5, and "McCarvel has attempted in good faith to respond to Crocs' accusations against him and to cooperate with Crocs' investigation of his actions."  Docket No. 11 at 25, ¶ 5.  Crocs's only argument for striking is that this defense is conclusory, *see* Docket No. 19 at 14-15, which the Court rejects.  *See Malibu Media*, 2014 WL 2859618, at *2.  Crocs fails to show that "the defense cannot succeed under any circumstance," *Chavez*, 423 F. Supp. 3d at 1108, because Crocs makes no argument along these lines.  *See A1 Garage Door*, 2022 WL 952874, at *7 (denying motion to strike good faith defense because plaintiff failed to show that good faith was not a defense to certain claims).  Accordingly, the Court will not strike this affirmative defense.

### 6. Sixth Affirmative Defense

Defendants' sixth affirmative defenses are that "[p]laintiff's claims are asserted in bad faith and represent a thinly veiled attempt at stomping out competitors with baseless claims," Docket No. 9 at 23, ¶ 6, and "[p]laintiff's claims are asserted in bad faith."  Docket No. 11 at 25, ¶ 6.  While the Court is doubtful that plaintiff's bad faith is an affirmative defense, Crocs's only argument for striking is that this defense is conclusory, *see* Docket No. 19 at 14-15, which the Court rejects.  *See Malibu Media*, 2014 WL 2859618, at *2.  Crocs fails to show that "the defense cannot succeed under

any circumstance," *Chavez*, 423 F. Supp. 3d at 1108, because Crocs makes no argument along these lines.  Accordingly, the Court will not strike this affirmative defense.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Crocs, Inc.'s Motion to Dismiss Defendant Joybees LLC's Counterclaims I-VI and Strike Affirmative Defenses [Docket No. 19] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that defendants' first affirmative defense is stricken.

DATED September 30, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge