**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02859-PAB-MEH

CROCS, INC.,

        Plaintiff,

v.

JOYBEES, INC., and
KELLEN McCARVEL,

        Defendants.

---

**DEFENDANTS' MOTION FOR FED. R. CIV. P. 37 SANCTIONS AGAINST PLAINTIFF**

---

      Defendants Joybees LLC ("Joybees") and Kellen McCarvel ("McCarvel") (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit their Motion for Fed. R. Civ. P. 37 Sanctions against Plaintiff Crocs, Inc. and in support thereof, state as follows:

## I.    CERTIFICATE OF CONFERRAL

      In accordance with Magistrate Judge Hegarty's Order of October 28, 2022, the Parties engaged in a lengthy conferral process spanning multiple weeks. When the Parties could not reach agreement on the issues in this Motion, Defendants sent Plaintiff a final conferral letter on November 15, 2022, clearly identifying the remaining issues in dispute. The issues in that letter remain unresolved, and Defendants waited more than a week before filing this Motion.

## II.    INTRODUCTION AND FACTUAL BACKGROUND.

      Defendants seek relief under three separate categories of discovery requests. First, due to Plaintiff's breach of the agreed upon protocol for Plaintiff's forensic analysis of Defendant McCarvel's devices, Defendants seek an order prohibiting any further analysis of the devices by

Plaintiff as a sanction for violating the ordered protocol and for using false pretenses to obtain the order in the first instance.  Defendants also seek an order from the Court designating the fact that no Take Folder documents ever came into contact with the laptop McCarvel used for his work with Joybees as established for purposes of the action.  Second, Defendants seek an award of fees ($26,875.50 supported by affidavit) incurred chasing down Plaintiff's late production under Defendants' RFP No. 1, including after Plaintiff told the Court it was ready to produce documents when, in fact, it had not even identified relevant custodians yet.  Finally, due to Plaintiff's failure to gather and timely produce documents responsive to Defendants' RFP Nos. 5, 6, 7, 8, 9, 16, and 18, Defendants seek an order striking certain documents produced in violation of Magistrate Judge Hegarty's September 28, 2022 Order and clarifying the same.

## III.   DISCUSSION.

### A.   Plaintiff Breached the Agreed Upon Protocol for the Forensic Analysis to Conduct Self-Help Discovery in Violation of the Court's Order.

#### 1.   Legal Standards

Under Fed. R. Civ. P. 37(b)(2)(A), "[i]f a party…fails to obey an order to provide or permit discovery,…the court where the action is pending may issue further just orders. They may include the following: (i) directing that…designated facts be taken as established for purposes of the action, as the prevailing party claims…."  "The interests of justice generally afford district courts 'very broad discretion to use sanctions where necessary' to ensure 'the expeditious and sound management of the preparation of cases for trial.'"  *Villanueva Echon v. Sackett*, 809 F. App'x 468, 472 (10th Cir. 2020) (quoting *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011)). "Of course, the determination 'of the correct sanction for a discovery violation is a

2

fact-specific inquiry that the district court is best qualified to make.'" *Id.* (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).

"Specifically, Rule 37(b)(2)(A)(i) gives courts the authority to decide 'that the matters embraced in the order or other designated facts be taken as established for purposes of the action' as a sanction for a party's failure to comply with a discovery order." *Id.* "And under Rule 56(g), a district court may 'enter an order stating any material fact ... is not genuinely in dispute and treating the fact as established in the case.'" *Id.* (quoting Fed. R. Civ. P. 56(g); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n.8, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (explaining that courts may act *sua sponte* to impose sanctions under Rule 56(g))).

### 2.    Analysis

Plaintiff's RFP No. 1 sought a forensic examination of Defendants' devices "concerning the acquisition, possession, disclosure, distribution, or use of all or any part of Crocs' Documents or emails, including but not limited [to] the contents of the Take Folder." *See* Ex. 1 at 6.  On March 22, 2022, Defendants sent Plaintiff a letter objecting to all of Plaintiff's RFPs as overly broad, stating that "Crocs's document requests as currently drafted would reach every aspect of Joybees's business." *See* Ex. 2 at 2.  Specifically, Defendants objected that "it is beyond the scope of this litigation, not to mention extremely burdensome, to require Joybees, a business, to produce an imaged copy of every device within its control, as requested by Request for Production No. 1." *Id.*  In response, Plaintiff sent Defendants a letter on April 5, 2022, agreeing to narrow the scope of many of its RFPs in order to reach a middle ground.  As to RFP No. 1, "Crocs propose[d] to at first image McCarvel's personal devices and McCarvel's Joybees work devices, reserving the right to seek to image other devices in the future." *See* Ex. 3 at 3.

Defendants remained concerned regarding the scope of Plaintiff's access to McCarvel's computer, which contained business information that was confidential and proprietary to Defendants. Accordingly, Defendants sent Plaintiff a response letter on April 15, 2022, stating,

> Defendants accept Crocs's proposal to image Defendant McCarvel's personal devices, with the condition that the third-party vendor mutually selected to conduct the imaging limit its subsequent analysis of the image to *searching for the documents in the Take Folder or documents, such as log files, that contain information related to the movement and/or copying of documents in the Take Folder.* Defendants will not agree to a broad, generalized review of the computer.

*See* Ex. 4 at 1 (emphasis added). The Parties continued to disagree as to the appropriate protocol regarding the forensic analysis of Defendant McCarvel's devices, so they ultimately appeared before Magistrate Judge Hegarty to seek an order on the same.

On August 18, 2022, following the hearing on this issue, counsel for Defendants emailed counsel for Plaintiff the following:

> I wanted to confirm that we have the same understanding regarding the procedure for the examination of Kellen's devices following Judge Hegarty's ruling:
>
> 1. Mr. Sun will search the devices for *documents from the Take Folder and Kellen's Crocs's email*, including by tracking if the documents and emails were accessed, moved copied, etc. . . .
>
> Please let me know if you think the foregoing is not consistent with Judge Hegarty's ruling. In order to ensure that our review is as efficient as possible, *please provide me with a copy of the instructions that you intend to provide to Mr. Sun, so that I have an idea of what the examination will cover and what is likely to be included in the results.*

*See* Ex. 5 at 1. (emphasis added). Counsel for Plaintiff responded on August 19, 2022, confirming that the forensic expert's review of the devices would be limited to searching for documents from the Take Folder and McCarvel's Crocs's email:

> Judge Hegarty accepted my offer which is close to what you
> described in numbers 1 and 2 below.  As to number 1, David will
> be looking for any evidence of Crocs documents or emails.  That
> includes, as I mentioned during the hearing, if McCarvel excerpted
> portions of a Crocs document into another email or document....

*See* Ex. 6 at 1.  With respect to Defendants' request for a copy of the instructions that Plaintiff's

counsel intended to provide to the forensic expert, Plaintiff's counsel replied:

> I do not understand what you mean by instructions that I provide to
> David.  I am not a forensic expert and would not know what
> instructions to provide.  I intend to tell him to search for Crocs
> documents and emails in the typical way that he conducts
> computer forensic examinations.

*Id*.  Given the sensitive nature of the documents and information on the devices, Defendants

remained concerned regarding what information the forensic examiner would be accessing.

Accordingly, on August 22, 2022, counsel for Defendants responded saying,

> On point 1, by 'instructions,' I am trying to understand what
> information Mr. Sun will be given so that he can locate Crocs
> documents.   For example, one possible approach that I can
> envision is that you intend to provide him a list of the names of the
> documents in the Take Folder and ask him to find/trace those
> documents.  Either way, please provide us an advance copy of the
> written instructions you are providing to him.

*See* Ex. 7 at 1.

On August 26, 2022, counsel for Plaintiff responded that, "David Sun already has a list of

the documents.  *He is the forensic consultant who uncovered the 'Take' folder* and also examined

the contents of the USBs that McCarvel returned.  *His instructions are to search for those*

*documents on McCarvel's electronic devices*."  *See* Ex. 8 at 1. (emphasis added).

After the extensive back and forth on the protocol for the forensic analysis and the order

memorializing the protocol by Magistrate Judge Hegarty, which the Parties confirmed through

further written correspondence, Defendants felt reassured that the forensic analysis would be limited to searching for documents from the Take Folder and McCarvel's Crocs email and turned McCarvel's devices over to Plaintiff for the forensic analysis on September 6, 2022.

Defendants did not hear anything regarding the results of Mr. Sun's examination for months, which counsel raised concerns about on their November 4, 2022 conferral call with Plaintiff.  Accordingly, after the conferral call, counsel for Plaintiff emailed David Sun with counsel for Defendants carbon copied and instructed him to "provide the list of documents containing the word "Crocs" that were found on Mr. McCarvel's laptop directly to [Defendants' counsel.]"  *See* Ex. 9 at 1.  Then, on November 8, 2022, Mr. Sun emailed counsel for Defendants stating, "[p]lease find attached the list of documents containing the word 'Crocs.'"  Attached was an excel spreadsheet that appeared to contain a list of every email and document on Defendant McCarvel's devices that mentioned the word, "Crocs."[1]  Nothing in the list gave any indication of if or how the documents related to the Take Folder documents, and Mr. Sun did not say whether he had located any of the Take Folder documents.

Concerned that the forensic analysis did not comply with the ordered protocol, Defendants reached out to Plaintiff to confirm what David Sun had done.  On a phone call that took place on November 9, 2022, Defendants asked if Mr. Sun was instructed to find the Take Folder documents and all derivatives thereof or if he was just instructed to search for the word, "Crocs."  Defendants also asked if the list sent by David Sun on November 8, 2022, was the final result of his analysis, or if searching for "Crocs" was just the first step in his analysis to aid him in finding documents that may have derived from the Take Folder documents.

---

[1] Ex. 10.  A copy of the spreadsheet is available for the Court's *in camera* review.

Plaintiff confirmed that David Sun was merely instructed to search for the word, "Crocs." In an email dated November 11, 2022, Plaintiff stated that,

> [b]ased upon this search, Mr. Sun can only confirm that there are no exact replicas on the Laptop from the Take folder, and he would need to perform a more in-depth document-by-document review to determine whether the items on the Laptop are derived from the original documents included in the Take Folder.  We have not authorized Mr. Sun to do a more in depth document-by-document review, and it is our understanding that Defendants object to Mr. Sun doing so.

*See* Ex. 11 at 1. Contrary to Plaintiff's claim, Defendants never objected to Mr. Sun doing a document-by-document review.  From the time Plaintiff first raised the idea of doing a forensic examination of Defendants' devices, Defendants have raised questions regarding how Plaintiff would be able to identify documents from the Take Folder.  However, Defendants have never expressed any concern about Mr. Sun conducting a document-by-document analysis. Defendants' concerns have always been that access to Mr. McCarvel's devices would be misused to find documents and information not related to the Take Folder documents.

Plaintiff's November 11, 2022 email confirmed that Defendants' fears have been realized.  Instead of searching for the Take Folder documents and McCarvel's Crocs emails, Mr. Sun was apparently tasked with finding every mention of "Crocs."  Given that the Parties are competitors and in active litigation, a reference to the word "Crocs" on the devices of Joybees's CEO likely encompasses business documents, documents protected by privilege, and other communications that presumably have nothing to do with the Take Folder.  More to the point, a search for "Crocs" on its own is in no way calculated to uncover the documents Mr. Sun was tasked to find – *i.e.* the documents from the Take Folder.  Plaintiff is not entitled to poke through all of Joybees' business documents and communications.

Even more troubling is that Plaintiff has attempted to justify its malfeasance by arguing that the documents identified by Mr. Sun "are responsive to Plaintiff's Request for Production No. 31 (among others) and must be produced to Crocs." *Id.* ; *see also* Ex. 12 at 6.  Whether or not the documents identified by Mr. Sun are responsive to any discovery requests is irrelevant. Plaintiff is not entitled to conduct self-help discovery, particularly under the auspices of a forensic examination in response to a strict protocol.  Plaintiff has grossly abused the process ordered by Magistrate Judge Hegarty after painstaking consideration at an in-person hearing in August of 2022.  Accordingly, Plaintiff has forfeited the opportunity to conduct an examination of Defendants' devices, and Defendants request an order precluding Plaintiff or its experts from examining any of Defendants' devices[2].  Moreover, given Plaintiff's admission that their expert was only able to confirm that no exact replicas of the Take Folder documents ever came into contact with the laptop Defendant McCarvel used in his work for Defendant Joybees, Defendants request an order designating that fact as established for purposes of this action.

> **B.**   **Plaintiff Failed to Obey the Court's Order to Produce All Documents Responsive to Defendants' Request for Production Number 1.**

Until its most recent production on Monday, November 21, 2022, Plaintiff had identified only one, single-page document that it produced in response to Defendants' RFP No. 1.  Plaintiff has not made any representations regarding what portion, if any, of its November 21 production is responsive to RFP No. 1.  Defendants will review the production and reserve the right to seek further production if proven necessary.  However, even if (1) the documents produced on November 21 are responsive to RFP No. 1 and (2) the production constitutes all of Plaintiff's documents responsive to RFP No. 1, Plaintiff's late production will not cure the harm suffered

---

[2] Plaintiff is filing its own Rule 37 Motion due to Defendants' refusal to provide more devices pending this decision.

by Defendants.  Accordingly, for the reasons set forth *infra*, Defendants seek an award of fees incurred to date pursuing a fulsome response to RFP No. 1 in an amount of $26,875.50.

### 1.    Legal Standards

Under Fed. R. Civ. P. 37(b)(2)(A), "[i]f a party...fails to obey an order to provide or permit discovery,...the court where the action is pending may issue further just orders."  Under Fed. R. Civ. P. 37(b)(2)(C), "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  (emphasis added).

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and in making such a determination trial courts are accorded broad discretion."  *E. Colorado Seeds, LLC v. Agrigenetics, Inc.*, No. 19-CV-01885-LTB-KMT, 2020 WL 2769792, at *2 (D. Colo. May 28, 2020) (internal quotations omitted) (quoting *Gates Rubber Co. v. Bando Chem. Indust., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (internal quotation marks and further citation omitted))).  "A court's discretion is guided by choosing a sanction that is both 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'"  *Id.* (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 695, 707 (1982)).

In cases where a party seeks an award of fees, "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Swan Glob. Invs., LLC v. Young*, No. 18-CV-03124-CMA-NRN, 2021 WL 3164242, at *1 (D. Colo. July 27, 2021) (internal quotations omitted) (quoting *Hensley v. Eckerhart*, 461

U.S. 424, 437 (1983)).  "Th[e] rule provides that the Court may award only those fees that were 'caused by' a discovery violation."  *Id.* (quoting F.R.C.P. 37(c)(1)(A), (b)(2)(C)).  [T]he Court must 'determine which of the attorney's fees and expenses ... were the result of specific violations of the [discovery] rules,' and award only those fees."  *Id.* (quoting *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990)).

      2.     **Analysis**

Defendants served their First Set of Requests for Production, which included RFP No. 1, on February 28, 2022, nearly nine months ago.  *See* Ex. 13 at 11.  On April 8, 2022, Plaintiff served its Responses and Objections to Defendants' First Set of Requests for Production – committing to producing non-privileged documents in its possession that are responsive to RFP No. 1.  *See* Ex. 14 at 4.  On August 19, 2022, when Defendants still had not received a single document responsive to RFP No. 1, they sent Plaintiff a letter identifying that deficiency in Plaintiff's production.  *See* Ex. 15 at 1.  After not receiving a response to that letter nor the responsive documents, Defendants followed up on September 5, 2022 in an email reminding Plaintiff's counsel that Plaintiff still had not produced documents responsive to RFP No. 1.  *See* Ex. 16 at 1.

On September 13, 2022, Defendants sent Plaintiff yet another letter reminding it that it had not produced any documents responsive to RFP No. 1.  *See* Ex. 17 at 1-2.  On September 21, 2022, Plaintiff responded to Defendants' September 13, 2022 letter, stating only that it "will produce the requested documents."  *See* Ex. 18 at 1.  Notably, Plaintiff did not offer any explanation for its long delay in producing responsive documents nor provide any indication that it was limiting its search for documents responsive to RFP No. 1 in any way.

With a Discovery Conference on September 28, 2022 pending, Defendants submitted a letter to Magistrate Judge Hegarty summarizing the deficiencies remaining in Plaintiff's production, which included the fact that Plaintiff had yet to produce any documents responsive to RFP No. 1.  *See* Ex. 19 at 2.  At the hearing, Defendants opened with the fact that Plaintiff had not produced any documents responsive to RFP No. 1.  *See* Ex. 20 at 4.  Magistrate Judge Hegarty immediately turned to Plaintiff's counsel, stating, "This sounds odd to me that we're six months after discovery requests, with a firm like yours and a client like yours, so I'm expecting a really pretty good explanation for all of that."  *Id*. at 4-5.  Plaintiff's counsel responded, "We have limited documents for them.  We will produce them forthwith."  *Id*. at 5.  Notably, Plaintiff's counsel did not provide any indication that Plaintiff was limiting its search for responsive documents in any way nor that it had not even identified relevant custodians yet.

In response to Plaintiff's counsel, Magistrate Judge Hegarty asked, "Why haven't you done that already?  If it's limited – if it's limited documents, why haven't you done it already?"  *Id*.  Plaintiff's counsel then stated, "We have the documents now.  We will produce . . . [and] we can do it in the next day or so[.]"  *Id*.  Magistrate Judge Hegarty responded that, "[the] rule going forward is that one thing I don't want to sit in decision over are obvious deficiencies and attorneys telling me it will be done in the next day or two…So I don't want to hear that one again…I don't want being in front of a judge to be the prompt for doing it."  *Id*. at 5-6  At the end of the hearing, counsel for Defendants asked the Court to "provide us a deadline or timeline for the expectation for the production of documents and supplementation that we just addressed for the last two hours[,]" and Magistrate Judge Hegarty responded, "[w]ell, so he promised something in the next day or two at the beginning of the hearing, so you've got that going for

11

you.  Otherwise, two weeks." *Id*. at 107.  Two days after the Discovery Conference, Plaintiff produced one, single-page document that it identified as responsive to Defendants' RFP No. 1. *See* Ex. 21 at 1.

On October 14, 2022, Defendants emailed Magistrate Judge Hegarty seeking permission to file a Rule 37 Motion based on, among other things, deficiencies in Plaintiff's production.  *See* Ex. 22 at 1.  Magistrate Judge Hegarty requested that Plaintiff respond to Defendants' request. *See* Ex. 23 at 1.  On October 17, 2022, Plaintiff submitted a letter to Magistrate Judge Hegarty asserting that "Crocs has fully complied with each of Your Honor's rulings."  *See* Ex. 24 at 2. Under the section of this letter titled, "Requests for Production Nos. 1 and 2," Plaintiff stated that, at the hearing, "Crocs explained that the documents were being gathered and about to be produced.  Crocs produced these documents on September 30, 2022." *Id*. (internal citations omitted).  This letter made no mention of the fact that Plaintiff produced only one, single-page document in response to RFP No. 1 – only that it had fully complied with its production obligation under this RFP.  *Id*.  Thus, on October 25, 2022, Defendants had to submit their own letter to Magistrate Judge Hegarty correcting the record and filling in the gaps of information left open by Plaintiff's letter, *i.e.*, that only one document was produced in response to RFP No. 1. *See* Ex. 25 at 3.

Based on Magistrate Judge Hegarty's October 28, 2022, Order, the Parties arranged a conferral call for November 2, 2022 to discuss the deficiencies identified in Defendants' October 25, 2022, letter.  *See* Ex. 26 at 1.  At the start of the call, counsel for Plaintiff admitted for the first time that, despite its contrary representations to Magistrate Judge Hegarty at the September 28, 2022 Discovery Conference and in its October 17, 2022, letter to the Court, Plaintiff *still* had

not started a fulsome search for documents responsive to Defendants' RFP No. 1.  Instead, Plaintiff stated it had run an incredibly limited search for documents accusing Joybees of infringement – a narrow topic that was not the subject of any of Defendants' RFPs that were in dispute.[3]  Notably, the single-page document identified by Plaintiff on September 30, 2022 as responsive to RFP No. 1 is not responsive to the restricted search Plaintiff claims to have run – *i.e.* communications accusing Joybees of infringement.  Further, Plaintiff acknowledged that it had not searched for all documents and communications referencing Joybees and, in fact, was still in the process of identifying custodians likely to have information responsive to RFP. No. 1. Defendants requested that Plaintiff provide them with a list of the custodians once they had been identified, which Plaintiff did on Friday, November 4, 2022.  *See* Ex. 27 at 3.  That same day, Plaintiff committed to producing documents responsive to RFP No. 1 on November 18, 2022.

As is evident from the extensive history cited above, Defendants have expended significant resources, including legal fees, chasing down documents that Plaintiff committed to produce in April.  Meanwhile, Plaintiff has obstructed Defendants' efforts, even representing to the Court that documents had "been collected" and Plaintiff had "fully complied" when it now appears custodians had yet to be identified.  The fact that Plaintiff now claims it is collecting and producing responsive documents does not cure the harm that Defendants have suffered. Accordingly, Defendants request a finding pursuant to Fed. R. Civ. P. 37(b)(2)(A) that Plaintiff failed to comply with the Court's September 28, 2022 Order and an order awarding Defendants

---

[3] Plaintiff attempts to conflate the stay of discovery entered by the Court related to Defendants' counterclaims. RFP No. 1, which sought all documents mentioning Joybees, was in no way specific to Defendants' counterclaims. To the contrary, documents mentioning Joybees are *directly* relevant to *Plaintiff's* claims, including those related to unfair competition, dilution, market and consumer confusion.  Thus, Plaintiff's duty to respond to RFP No. 1 was not impacted by the stay of discovery related to Defendants' counterclaims nor was Plaintiff allowed to unilaterally (and secretly) pick and choose how to limit its responses based on the stay.

the fees they incurred (supported by affidavit) in pursuing a substantive response to RFP No. 1 pursuant to Fed. R. Civ. P. 37(b)(2)(C).  Defendants also reserve the right to seek further relief in the event Plaintiff's recent production of documents responsive to RFP No. 1 remains deficient.

> **C.  Plaintiff Failed to Obey the Court's Order Precluding the Production of Preexisting Documents Responsive to Defendants' Requests for Production Numbers 5, 6, 7, 8, 9, 16, and 18.**

> **1.  Legal Standards**

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Under Fed. R. Civ. P. 26(e), "A party who has…responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…."

"A violation of Rule 26(a)(2) is addressed by the court pursuant to Rule 37(c) of the Federal Rules of Procedure[,]" which allows the Court to strike the non-compliant document. *Access 4 All Inc. v. Silver Oak Assocs., Ltd., LLP*, No. 21-CV-02974-NYW, 2022 WL 4547566, at *4 (D. Colo. Sept. 29, 2022).   "The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the court."  *Id.* (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).  "In exercising its discretion, the court considers four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness."  *Id.* (citing *Woodworker's Supply*, 170 F.3d at 993).  "The non-moving

party bears the burden of showing they were substantially justified in failing to comply with Rule 26[], and that the failure was harmless." *Id*. (citing *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004)).

### 2.   Analysis

Defendants served their RFP Nos. 5, 6, 7, 8, and 9 on February 28, 2022.  *See* Ex. 13 at 11-12.  Plaintiff served its Responses and Objections to Defendants' First Set of Requests for Production on April 8, 2022, committing to producing documents responsive to these RFPs.  *See* Ex. 14 at 6-8.  Defendants served their RFP Nos. 16 and 18 on March 22, 2022.  *See* Ex. 28 at 11.  Plaintiff served its Responses and Objections to Defendants' Second Set of Requests for Production on May 12, 2022, committing to produce documents responsive to these RFPs.  *See* Ex. 29 at 7.  On June 13, 2022, Plaintiff produced 29 documents composed of a total of 181 pages, which it later purported were responsive to RFP Nos. 5, 6, 7, 8, 9, 16, and 18.  Every page of these twenty-nine documents came from an internet search Plaintiff ran on May 14, 2022.

On August 19, 2022, Defendants sent Plaintiff a discovery deficiency letter specifically asking Plaintiff to produce all documents in response to RFP Nos. 5, 6, 7, 8, 9, 16, and 18, or to identify the responsive documents already produced by Bates number if it believed its production was complete.  *See* Ex. 15 at 1-3.  When Plaintiff did not respond, Defendants followed up on September 5, 2022, in an email reminding Plaintiff's counsel of the deficiencies Defendants identified in their August 19, 2022 letter.  *See* Ex. 16 at 1.  When Plaintiff again did not respond, Defendants sent Plaintiff another letter on September 13, 2022, identifying deficiencies in these RFPs once again.  *See* Ex. 17 at 1-2.  On September 21, 2022, Plaintiff responded to Defendants' letters identifying the Bates numbers for documents responsive to these RFPs.  *See* Ex. 18 at 2-3.

At the September 28, 2022 Discovery Conference, Defendants raised concerns about whether Plaintiff's production under these RFPs was complete.  Counsel for Defendants stated, "We're seeking some sort of confirmation or clarity that we have received all of the documents …Our goal is to begin depositions, Your Honor, and we don't want a moving target."  *See* Ex. 20 at 6-7.  Magistrate Judge Hegarty said to Plaintiff, "At the moment, Mr. Nitta is just looking for your representation, binding on your client, that as to those specific requests for production, 5, 6, 7, 8, 9, 16, and 18, those 181 pages are all that you have."  *Id*. at 9.  Plaintiff's counsel responded, "Yes...Confirmed."  *Id*. at 9-10.  Magistrate Judge Hegarty then said, "that would mean that whatever you produce in the future, you either obtain from this moment on fresh, or— well, yes.  You obtain from this moment on and you won't be producing to them anything that preexisted in the files of Crocs, correct?"  *Id*. at 10.  Plaintiff's counsel stated, "[t]hat is correct, Your Honor."  *Id*.  In so confirming, Plaintiff's counsel committed that all of the documents previously gathered by Plaintiff, including during the Internet search it conducted on May 14, 2022 and all other searches, had been produced.

Two days later, on September 30, 2022, Plaintiff inexplicably produced six documents it pulled from an internet search it apparently conducted on September 29, 2022.  *See* Ex. 30. Plaintiff failed to offer any explanation for why it immediately commenced additional searching the day after the Discovery Conference, how that search differed from prior searches, and why it apparently uncovered documents that its prior searches had missed.  Conspicuously, every document Plaintiff produced on September 30, 2022 predates the September 28, 2022 Discovery Conference, and most of the results significantly predate the search Plaintiff conducted on May 14, 2022.  Even if May 14, 2022 was the last time Plaintiff conducted an Internet search, the

documents gathered by Plaintiff on September 29, 2022 could have been gathered during the May 14th search.  Plaintiff's decision to run a new search the day after the Discovery Conference demonstrated definitively that Plaintiff believes it can circumvent its discovery obligations and create a moving target with respect to the documents it intends to rely on to support its claims by classifying previously unproduced documents as the products of a "new search."

During the Parties' November 2, 2022 conferral call in compliance with Magistrate Judge Hegarty's October 28, 2022 Order, Defendants asked Plaintiff to agree to withdraw the six documents wrongfully produced on September 30, 2022 and to commit that it would not run additional Internet searches for historical documents that predate the Discovery Conference. Defendants expressed that their understanding of Magistrate Judge Hegarty's ruling at the Discovery Conference was that Plaintiff could only produce documents responsive to RFP Nos. 5, 6, 7, 8, 9, 16, and 18 if those documents came to Plaintiff through Defendant's production, through a third-party subpoena, or if those documents were created after September 28, 2022. Counsel for Defendants asked counsel for Plaintiff to see what her client would agree to and return to Defendants with a proposed stipulation.

On November 11, 2022, counsel for Plaintiff emailed Defendants stating that,

> [a]fter careful consideration, Crocs cannot agree to any date cutoff of evidence of third-party consumer confusion that is or was previously posted on the internet by third-parties and is not currently within Crocs' possession or knowledge.  We have re-read Magistrate Judge Hegarty's ruling on this issue and believe that the Court unambiguously ordered that Crocs's production in this regard would be limited to newly discovered documents obtained from Defendants or third parties, including the internet, that are not currently within Crocs's preexisting files.

*See* Ex. 31 at 1.  Under Plaintiff's approach, it is entitled to use any documents it wants that would be responsive to RFP Nos. 5, 6, 7, 8, 9, 16, and 18 so long as it can demonstrate that the

document was "discovered" during a search that occurred after September 28, 2022.  In fact,

Plaintiff has already done this very thing.  Among the documents produced on September 30,

2022 are two documents composed of reviews from Costco.com, nearly all of which predate

September 28, 2022.  *See* Ex. 30.  Although Plaintiff claims that it "discovered" the documents

on September 29, 2022, Plaintiff's own communications confirm that Plaintiff was aware of the

documents prior to the September 28, 2022, hearing.  On September 19, 2022, Plaintiff produced

its Responses and Objections to Defendants' Interrogatories Nos. 9-15 and 21-22.  In response to

Defendants' Interrogatory Nos. 14 and 15, which related to evidence of consumer confusion,

Plaintiff stated, "[i]n March 2022, a consumer wrote a review on Costco.com after purchasing

Joybees shoes, believing them to be a Crocs' product."  *See* Ex. 32 at 24 & 32.

On September 22, 2022, Defendants sent Plaintiff a letter identifying additional discovery

deficiencies in advance of the September 28, 2022, Discovery Conference.  In this letter,

Defendants stated,

> In its supplemental responses to Interrogatory Nos. 14 and 15,
> Crocs alleges that '[i]n March 2022, a consumer wrote a review on
> Costco.com after purchasing Joybees shoes, believing them to be a
> Crocs' product.'  This is the only review cited by Crocs for which
> it does not provide a direct quote.  Further, as indicated by the
> absence of a Bates number after the assertion, this is the only
> review cited in the Supplemental Responses that Crocs has not
> produced to Defendants.  Crocs must immediately further
> supplement its responses to Interrogatory Nos. 14 and 15 by
> producing this review and, in the meantime, by providing a direct
> quote from the review that reflects Crocs's above characterization
> of the review or Defendants will seek an appropriate Order from
> Magistrate Judge Hegarty.

*See* Ex. 33 at 2.  Plaintiff failed to produce the review or provide a direct quote from the review

prior to the Discovery Conference.  Two days after the Discovery Conference, although Plaintiff

clearly had this review in its files as early as September 19, 2022 when it produced its Responses and Objections to Defendants' Interrogatories Nos. 9-15 and 21-22, Plaintiff produced a copy that it had "discovered" during the search it ran the day after the Discovery Conference.

Defendants confronted Plaintiff with these facts and asked if, in light of its interpretation of Magistrate Judge Hegarty's ruling that it could not produce anything that preexisted in its files prior to September 28, 2022, it would agree to withdraw the Costco.com review that clearly preexisted in its files. Plaintiff refused to so agree and also failed to provide an explanation for why it produced the review as part of a "new search" or why it identified the document as responsive to RFP Nos. 5, 6, 7, 8, 9, 16, and 18. Thus, Plaintiff will not even comply with its own interpretation of Magistrate Judge Hegarty's ruling.

Defendants have not concealed the fact that their purpose in attempting to compel Plaintiff's long over-due production is that they want to proceed with depositions. RFP Nos. 5, 6, 7, 8, 9, 16, and 18 seek information critical to Plaintiff's claims and Defendants' defenses. Plaintiff cannot be allowed to "hide the ball" with respect to the evidence upon which it intends to rely only to reveal it after depositions are complete on the pretense the documents were "newly discovered" by Plaintiff. Plaintiff clearly conducted Internet searches both before the lawsuit was filed and again during the lawsuit. For reasons known only to Plaintiff, it chose only to save and/or to produce a handful of the documents it located before the Discovery Conference. Allowing Plaintiff to "remedy" this deficiency by conducting "new searches" and continuing to trickle out documents is prejudicial to Defendants' ability to litigate their defenses.

At the very least, Plaintiff is willfully neglecting its discovery obligations. In a letter Plaintiff sent Defendants on November 17, 2022, Plaintiff argued that "it is virtually impossible

to identify all evidence of consumer confusion with one Google search," seemingly admitting that, in the nine months since discovery began, it has only *once* attempted to search for documents responsive to these RFPs. *See* Ex. 12 at 4. Even if that is the case, and if for whatever reason that search only yielded the handful of documents produced by Plaintiff to date, Plaintiff apparently made no effort to augment its deficient production. Further, Plaintiff cannot account for the whereabouts of any documents it located *before* filing the lawsuit. Plaintiff cannot be allowed to circumvent its discovery obligations to gain a strategic advantage.

Defendants formed their company out of the bankruptcy assets of a company that was driven into bankruptcy by litigation with Plaintiff, who used the same dilatory, resource-draining, obstructionist tactics it now turns on Defendants. Joybees is a small company that lacks the resources to continue fighting indefinitely to compel Plaintiff to prosecute the case it brought over a year ago. Various Joybees retailers have expressed apprehension about carrying Joybees' products during this litigation out of fear that Plaintiff will come after them. *See* Ex. 34 at 1. Every day this litigation drags out is a detriment to Defendants. Plaintiff's delay has prejudiced Defendants and continues to do so. Further, Plaintiff's violations of the September 28, 2022 Order are clearly willful. Plaintiff did not request – and the Court certainly did not award – Plaintiff license to conduct additional searches to augment its deficient production (or to "find" documents that it previously failed to produce) at times that yield the most strategic benefit – *i.e.* after the completion of depositions or as part of expert discovery after the close of fact discovery. Accordingly, Defendants request an order striking the six documents produced on September 29, 2022 and precluding Plaintiff from relying on any

document not produced by Defendants or in response to a subpoena that pre-existed the September 28, 2022 Discovery Conference.

WHEREFORE, Defendants respectfully request that this Court enter an Order granting their Motion for Fed. R. Civ. P. 37 Sanctions against Plaintiff Crocs, Inc.

Respectfully submitted this 28th day of November, 2022.

KUTAK ROCK LLP

*s/ Chad T. Nitta*
Chad T. Nitta
Jason S. Jackson
Heather N. Tilley
Shelby L. Morbach
1801 California St., Suite 3000
Denver, CO 80202
Tel:  303-297-2400
chad.nitta@kutakrock.com
jason.jackson@kutakrock.com
heather.tilley@kutakrock.com
shelby.morbach@kutakrock.com

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of November, 2022, I electronically filed the

foregoing **DEFENDANTS' MOTION FOR FED. R. CIV. P. 37 SANCTIONS AGAINST**

**PLAINTIFF** with the Clerk of Court using the CM/ECF system which will send notification of

such filing to the following e-mail addresses:

Suneeta Hazra
Adrienne Boyd
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
Tel: (303) 863-1000
Suneeta.Hazra@arnoldporter.com
Adrienne.Boyd@arnoldporter.com
*Attorneys for Plaintiff*

Jonathan K. Cooperman
Anne-Marie Mitchell
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
jcooperman@kelleydrye.com
amitchell@kelleydrye.com
*Attorneys for Plaintiff*

*s/ Chad T. Nitta*
Chad T. Nitta
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel:  303-297-2400
chad.nitta@kutakrock.com

4867-6083-6414.2