IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02859-PAB-MEH

CROCS, INC.,

       Plaintiff,

v.

JOYBEES, INC., and
KELLEN McCARVEL,

       Defendants.

---

**DEFENDANTS' MOTION FOR FED. R. CIV. P. 37 SANCTIONS AGAINST PLAINTIFF**

---

       Defendants Joybees LLC ("Joybees") and Kellen McCarvel ("McCarvel") (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit their Motion for Fed. R. Civ. P. 37 Sanctions against Plaintiff Crocs, Inc. and in support thereof, state as follows:

**I.    CERTIFICATE OF CONFERRAL**

       The Parties conferred by phone, email, and letter as ordered on October 28, 2022.

**II.    INTRODUCTION AND FACTUAL BACKGROUND.**

       Defendants seek relief under three separate categories of discovery requests. First, due to Plaintiff's breach of the agreed upon protocol for Plaintiff's forensic analysis of Defendant McCarvel's devices, Defendants seek an order prohibiting any further analysis of the devices by Plaintiff. Defendants also seek an order from the Court designating the fact that no Take Folder documents ever came into contact with the laptop McCarvel used for his work with Joybees as established for purposes of the action. Second, Defendants seek an award of fees incurred chasing down Plaintiff's late production in response to Defendants' RFP No. 1, including after

Plaintiff told the Court it was ready to produce documents when, in fact, it had not even identified custodians from whom to collect responsive documents. Finally, due to Plaintiff's failure to gather and timely produce documents responsive to Defendants' RFP Nos. 5, 6, 7, 8, 9, 16, and 18, Defendants seek an order striking certain documents produced in violation of Magistrate Judge Hegarty's September 28, 2022 Order and clarifying the same.

## III. DISCUSSION.

### A. Plaintiff Breached the Agreed Upon Protocol for the Forensic Analysis to Conduct Self-Help Discovery in Violation of the Court's Order.

#### 1. Legal Standards

Under Fed. R. Civ. P. 37(b)(2)(A), "[i]f a party…fails to obey an order to provide or permit discovery,…the court…may issue further just orders. They may include the following: (i) directing that…designated facts be taken as established for purposes of the action…." "The interests of justice generally afford district courts 'very broad discretion to use sanctions where necessary' to ensure 'the expeditious and sound management of the preparation of cases for trial.'" *Villanueva Echon v. Sackett*, 809 F. App'x 468, 472 (10th Cir. 2020) (quoting *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011)). "Of course, the determination 'of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make.'" *Id*. (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).

"Specifically, Rule 37(b)(2)(A)(i) gives courts the authority to decide 'that the matters embraced in the order or other designated facts be taken as established for purposes of the action' as a sanction for a party's failure to comply with a discovery order." *Id*. "And under Rule 56(g), a district court may 'enter an order stating any material fact ... is not genuinely in dispute and treating the fact as established in the case.'" *Id*. (quoting Fed. R. Civ. P. 56(g); *see also*

2

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n.8, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (explaining that courts may act *sua sponte* to impose sanctions under Rule 56(g))).

    **2.    Analysis**

Plaintiff's RFP No. 1 sought a forensic examination of Defendants' devices "concerning the…use of all or any part of Crocs' Documents or emails, including but not limited [to] the contents of the Take Folder." *See* Ex. 1 at 6.[1] On March 22, 2022, Defendants sent Plaintiff a letter objecting Plaintiff's RFP No. 1 as overly broad, stating that "it is beyond the scope of this litigation, not to mention extremely burdensome, to require Joybees, a business, to produce an imaged copy of every device within its control, as requested by Request for Production No. 1." *See* Ex. 2 at 2. In response, Plaintiff proposed to narrow the scope of RFP No. 1 to reach a middle ground. *See* Ex. 3 at 3. Defendants responded by stating that they would "not agree to a broad, generalized review of the computer[,]" and would only agree to Plaintiff "searching for the documents in the Take Folder or documents, such as log files, that contain information related to the movement and/or copying of documents in the Take Folder." *See* Ex. 4 at 1.

The Parties ultimately appeared before Magistrate Judge Hegarty regarding the appropriate protocol. Following the hearing, counsel for Defendants emailed counsel for Plaintiff to confirm the Parties' understanding of the procedure ordered by Magistrate Judge Hegarty. *See* Ex. 5 at 1. Counsel for Defendants stated his understanding that "Mr. Sun will search the devices for documents from the Take Folder and Kellen's Crocs's email, including by tracking if the documents and emails were accessed, moved copied, etc." and asked counsel for Plaintiff to "provide me with a copy of the instructions that you intend to provide to Mr. Sun, so

---

[1] Defendants have highlighted relevant language in the Exhibits for the Court's ease of review.

that I have an idea of what the examination will cover and what is likely to be included in the results." *Id*. Counsel for Plaintiff responded by confirming that the forensic expert's review of the devices would be limited to searching for documents from the Take Folder and McCarvel's Crocs email and clarifying the instructions he intended to provide to the forensic expert: "I intend to tell him to search for Crocs documents and emails in the typical way that he conducts computer forensic examinations." *Id*.

Given the sensitive nature of the documents and information on the devices, counsel for Defendants responded on August 22, 2022, clarifying, "I am trying to understand what information Mr. Sun will be given so that he can locate Crocs documents." *See* Ex. 7 at 1. On August 26, 2022, counsel for Plaintiff responded that, "David Sun already has a list of the documents. *He is the forensic consultant who uncovered the 'Take' folder* and also examined the contents of the USBs that McCarvel returned. *His instructions are to search for those documents on McCarvel's electronic devices*." *See* Ex. 8 at 1. (emphasis added).

After this extensive back and forth and the order by Magistrate Judge Hegarty clarifying the protocol, Defendants felt reassured that the forensic analysis would be limited to searching for documents from the Take Folder and McCarvel's Crocs email and produced McCarvel's devices on September 6, 2022. Defendants did not hear anything regarding the results of Mr. Sun's examination for months and therefore inquired during their November 4, 2022 conferral call with Plaintiff. After the conferral call, counsel for Plaintiff emailed David Sun and instructed him to "provide the list of documents containing the word "Crocs" that were found on Mr. McCarvel's laptop directly to [Defendants' counsel.]" *See* Ex. 9 at 1. Then, on November 8, 2022, Mr. Sun emailed counsel for Defendants stating, "[p]lease find attached the list of

4

documents containing the word 'Crocs.'" Attached was a spreadsheet that appeared to contain a list of every email and document on Defendant McCarvel's devices that mentioned "Crocs."[2] Nothing in the list gave any indication of how the documents related to the Take Folder documents, and Mr. Sun did not say if he had located any of the Take Folder documents.

Concerned that the forensic analysis did not comply with the ordered protocol, Defendants reached out to Plaintiff to confirm what David Sun had done. On a phone call that took place on November 9, 2022, Defendants asked if Mr. Sun was instructed to find the Take Folder documents and all derivatives thereof or if he was just instructed to search for the word, "Crocs." Defendants also asked if the list sent by David Sun on November 8, 2022, was the final result of his analysis, or if searching for "Crocs" was just the first step in his analysis to aid him in finding documents that may have derived from the Take Folder documents.

Plaintiff confirmed that David Sun was merely instructed to search for the word, "Crocs." In an email dated November 11, 2022, Plaintiff stated that, "Mr. Sun can only confirm that there are no exact replicas on the Laptop from the Take folder, and he would need to perform a more in-depth document-by-document review to determine whether the items on the Laptop are derived from the original documents included in the Take Folder." *See* Ex. 11 at 1. Plaintiff then stated that, "[w]e have not authorized Mr. Sun to do a more in depth document-by-document review, and it is our understanding that Defendants object to Mr. Sun doing so." *See* Ex. 11 at 1. Contrary to Plaintiff's claim, Defendants never objected to Mr. Sun doing a document-by-document review. From the beginning, Defendants have raised questions about how Plaintiff could identify documents from the Take Folder but have never expressed concern

---

[2] Ex. 10. A copy of the spreadsheet is available for the Court's *in camera* review.

about Mr. Sun conducting a document-by-document analysis. They have only been concerned the analysis would be misused to find documents and information not related to the Take Folder.

Plaintiff's November 11, 2022 email confirmed that, instead of searching for the Take Folder documents and McCarvel's Crocs emails, Mr. Sun was apparently tasked with finding every mention of "Crocs." Given that the Parties are competitors and in active litigation, a reference to the word "Crocs" on the devices of Joybees's CEO likely encompasses business documents, documents protected by privilege, and other communications that presumably have nothing to do with the Take Folder. More to the point, a search for "Crocs" on its own is in no way calculated to uncover the documents Mr. Sun was tasked to find – *i.e.* the documents from the Take Folder. Plaintiff is not entitled to poke through all of Joybees' business documents.

Worse is that Plaintiff attempted to justify its malfeasance by arguing the documents identified by Mr. Sun "are responsive to Plaintiff's Request for Production No. 31 (among others) and must be produced to Crocs." *Id*.; *see also* Ex. 12 at 5. Whether or not the documents identified by Mr. Sun are responsive to any discovery requests is irrelevant. Plaintiff is not entitled to conduct self-help discovery under the auspices of a forensic examination in response to a strict protocol. Plaintiff has abused the process that was painstakingly negotiated by the Parties and ordered by Magistrate Judge Hegarty. Accordingly, Plaintiff forfeited the opportunity to examine Defendants' devices, and Defendants request an order precluding Plaintiff or its experts from examining any of Defendants' devices.[3] Moreover, given Plaintiff's admission that their expert confirmed that no exact replicas of the Take Folder documents ever

---

[3] Plaintiff has indicted that it intends to file its own Rule 37 Motion due to Defendants' refusal to provide more devices as a result of Plaintiff's violation of the agreed-upon protocol.

6

4867-6083-6414.2

came into contact with the laptop Defendant McCarvel used in his work for Defendant Joybees, Defendants request an order designating that fact as established for purposes of this action.

### B. Plaintiff Failed to Obey the Court's Order to Produce All Documents Responsive to Defendants' RFP No. 1.

To date, Plaintiff has identified only one, single-page document that it produced in response to Defendants' RFP No. 1. Plaintiff produced documents on November 21, 2022 but did not indicate which, if any, of the documents are responsive to RFP No. 1. Defendants will review that production and reserve the right to seek further production if necessary. However, even if the documents produced on November 21 are responsive to RFP No. 1, Plaintiff's late production will not cure the harm suffered by Defendants. Thus, for the reasons set forth *infra*, Defendants seek an award of fees incurred pursuing RFP No. 1 in an amount of $26,875.50.

#### 1. Legal Standards

Under Fed. R. Civ. P. 37(b)(2)(A), "[i]f a party…fails to obey an order to provide or permit discovery…the court…may issue further just orders." Under Fed. R. Civ. P. 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and in making such a determination trial courts are accorded broad discretion." *E. Colorado Seeds, LLC v. Agrigenetics, Inc.*, No. 19-CV-01885-LTB-KMT, 2020 WL 2769792, at *2 (D. Colo. May 28, 2020) (internal quotations omitted) (quoting *Gates Rubber Co. v. Bando Chem. Indust., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (internal quotation marks and further citation

7

omitted))). "A court's discretion is guided by choosing a sanction that is both 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'" *Id*. (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 695, 707 (1982)).

### 2. Analysis

Defendants served their First Set of Requests for Production on February 28, 2022. *See* Ex. 13 at 11. On April 8, 2022, Plaintiff committing to producing non-privileged documents in its possession that are responsive to RFP No. 1. *See* Ex. 14 at 4. On August 19, 2022, Defendants sent Plaintiff a letter noting Plaintiff's total lack of production under RFP No. 1. *See* Ex. 15 at 1. Defendants followed up again in an email on September 5, 2022 (*See* Ex. 16 at 1) and a letter on September 13, 2022 (*See* Ex. 17 at 1-2). On September 21, 2022, Plaintiff responded to Defendants' September 13, 2022 letter, stating only that it "will produce the requested documents." *See* Ex. 18 at 1. Notably, Plaintiff did not offer any explanation for its long delay in its production, nor provide any indication that it was limiting its search for documents responsive to RFP No. 1 in any way.

With a Discovery Conference on September 28, 2022 pending, Defendants submitted a letter to Magistrate Judge Hegarty summarizing the deficiencies remaining in Plaintiff's production, which included Plaintiff's failures under RFP No. 1. *See* Ex. 19 at 2. At the hearing, Defendants opened with the fact that Plaintiff had not produced any documents responsive to RFP No. 1. *See* Ex. 20 at 4. Magistrate Judge Hegarty turned to Plaintiff's counsel, stating, "This sounds odd to me that we're six months after discovery requests, with a firm like yours and a client like yours, so I'm expecting a really pretty good explanation for all of that." *Id*. at 4-5. Plaintiff's counsel responded, "We have limited documents for them. We will produce them

8

forthwith." *Id.* at 5. Notably, Plaintiff did not provide any indication that it was limiting its search for responsive documents based on the stay related to Defendants' Counterclaims nor that it had not identified relevant custodians yet from whom to collect responsive documents.

Magistrate Judge Hegarty then asked, "Why haven't you done that already...if it's limited documents, why haven't you done it already?" *Id.* Plaintiff stated, "We have the documents now. We will produce . . . [and] we can do it in the next day or so[.]" *Id.* At the end of the hearing, when Defendants asked the Court for a deadline for the production of documents that had been addressed, Magistrate Judge Hegarty responded, "[w]ell, so he promised something in the next day or two at the beginning of the hearing, so you've got that going for you. Otherwise, two weeks." *Id.* at 107. Two days after the Discovery Conference, Plaintiff produced one, single-page document that it identified as responsive to Defendants' RFP No. 1. *See* Ex. 21 at 1.

On October 14, 2022, Defendants emailed Magistrate Judge Hegarty seeking permission to file a Rule 37 Motion based on deficiencies in Plaintiff's production. *See* Ex. 22 at 1. Magistrate Judge Hegarty requested that Plaintiff respond to Defendants' request. *See* Ex. 23 at 1. On October 17, 2022, Plaintiff submitted a letter to Magistrate Judge Hegarty asserting that "Crocs has fully complied with each of Your Honor's rulings." *See* Ex. 24 at 2. Under the section of this letter titled, "Requests for Production Nos. 1 and 2," Plaintiff stated that, at the hearing, "Crocs explained that the documents were being gathered and about to be produced. Crocs produced these documents on September 30, 2022." *Id.* (internal citations omitted). This letter made no mention of the fact that Plaintiff produced only one document in response to RFP No. 1 nor that Plaintiff had limited its collection of documents. Thus, on October 25, 2022, Defendants submitted their own letter filling in the gaps of information left open by Plaintiff's

9

letter, *i.e.*, that only one document was produced in response to RFP No. 1.  *See* Ex. 25 at 3.

Based on the Court's October 28, 2022 Order, the Parties conferred on November 2, 2022 to discuss the deficiencies identified in Defendants' October 25, 2022, letter.  *See* Ex. 26 at 1. During the call, counsel for Plaintiff admitted that, despite Plaintiff's contrary representations to the Court at the September 28, 2022 Discovery Conference and in its October 17, 2022 letter, Plaintiff *still* had not started a fulsome search for documents responsive to Defendants' RFP No. 1.  Instead, Plaintiff claimed during the call that it had only collected documents accusing Joybees of infringement.[4]  Notably, the single-page document identified by Plaintiff on September 30, 2022 as responsive to RFP No. 1 is not responsive to the restricted search Plaintiff claims to have run.  Plaintiff then acknowledged that it was still in the process of identifying custodians likely to have information responsive to RFP. No. 1.  Defendants requested that Plaintiff provide them with a list of the custodians once they had been identified, which Plaintiff did on Friday, November 4, 2022.  *See* Ex. 27 at 3.  That same day, Plaintiff committed to producing documents responsive to RFP No. 1 on November 18, 2022.

As is evident from this extensive history, Defendants expended significant resources, including legal fees, chasing down documents Plaintiff committed to produce in April. Meanwhile, Plaintiff has obstructed Defendants' efforts, even representing to the Court that Plaintiff had "fully complied" when it now appears custodians had yet to be identified.  The fact

---

[4] Plaintiff justified its narrow search by invoking the Court's stay of discovery related to Defendants' counterclaims.  RFP No. 1 is not specific to Defendants' counterclaims.  Rather, it seeks documents that are *directly* relevant to *Plaintiff's* claims, including those related to unfair competition, dilution, and consumer confusion.  To the extent Plaintiff believed that the stay limited its obligation to collect *any* documents responsive to RFP. No. 1, Plaintiff should have disclosed that to Defendants and the Court rather than unilaterally (and secretly) choosing how to limit its responses under the stay.

Plaintiff claims it is now producing responsive documents does not cure the harm Defendants have suffered. Accordingly, Defendants ask for a finding pursuant to Fed. R. Civ. P. 37(b)(2)(A) that Plaintiff failed to comply with the Court's September 28, 2022 Order and an order awarding Defendants the fees they incurred (supported by affidavit) in pursuing a substantive response to RFP No. 1 pursuant to Fed. R. Civ. P. 37(b)(2)(C). Defendants reserve the right to seek further relief if Plaintiff's recent production of documents responsive to RFP No. 1 remains deficient.

### C. Plaintiff Disobeyed the Court's Order Precluding Production of Preexisting Documents Responsive to Defendants' RFP Nos. 5, 6, 7, 8, 9, 16, and 18.

#### 1. Legal Standards

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information…to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Under Fed. R. Civ. P. 26(e), "A party who has…responded to a[]…request for production…must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…."

"A violation of Rule 26(a)(2) is addressed by the court pursuant to Rule 37(c) of the Federal Rules of Procedure[,]" which allows the Court to strike the non-compliant document. *Access 4 All Inc. v. Silver Oak Assocs., Ltd., LLP*, No. 21-CV-02974-NYW, 2022 WL 4547566, at *4 (D. Colo. Sept. 29, 2022). "The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the court." *Id*. (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). "In exercising its discretion, the court considers four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's

bad faith or willfulness." *Id*. "The non-moving party bears the burden of showing they were substantially justified in failing to comply with Rule 26[], and that the failure was harmless." *Id*.

### 2. Analysis

Defendants served RFP Nos. 5, 6, 7, 8, and 9 on February 28, 2022 and RFP Nos. 16 and 18 on March 22, 2022. *See* Ex. 13 at 11-12; *see* Ex. 28 at 11. Plaintiff responded on April 8, 2022, and May 12, 2022, respectively, committing to producing documents responsive to these RFPs. *See* Ex. 14 at 6-8; s*ee* Ex. 29 at 7. On June 13, 2022, Plaintiff produced 29 documents it later purported were responsive to RFP Nos. 5, 6, 7, 8, 9, 16, and 18. All 181 pages of this production came from an internet search Plaintiff ran on May 14, 2022.

On August 19, 2022, Defendants sent Plaintiff a letter asking Plaintiff to produce all documents in response to RFP Nos. 5, 6, 7, 8, 9, 16, and 18, or to identify the responsive documents already produced by Bates number. *See* Ex. 15 at 1-3. When Plaintiff did not respond, Defendants followed up on September 5, 2022 (*See* Ex. 16 at 1) and again on September 13, 2022 (*See* Ex. 17 at 1-2). On September 21, 2022, Plaintiff responded identifying the Bates numbers for documents responsive to these RFPs. *See* Ex. 18 at 2-3.

At the Discovery Conference, Defendants questioned if Plaintiff's production under these RFPs was complete, stating, "[w]e're seeking some sort of confirmation or clarity that we have received all of the documents …Our goal is to begin depositions, Your Honor, and we don't want a moving target." *See* Ex. 20 at 6-7. The Court told Plaintiff, "[a]t the moment, Mr. Nitta is just looking for your representation, binding on your client, that as to those specific requests for production, 5, 6, 7, 8, 9, 16, and 18, those 181 pages are all that you have." *Id*. at 9. Plaintiff's counsel responded, "Yes...Confirmed." *Id*. at 9-10. The Court then said, "that would

12

mean that whatever you produce in the future, you either obtain from this moment on fresh, or—well, yes. You obtain from this moment on and you won't be producing to them anything that preexisted in the files of Crocs, correct?" *Id*. at 10. Plaintiff's counsel stated, "[t]hat is correct, Your Honor[,]" confirming all documents previously gathered had been produced. *Id*.

Two days later, on September 30, 2022, Plaintiff produced six documents it pulled from an internet search it apparently conducted on September 29, 2022. *See* Ex. 30. Plaintiff failed to offer any explanation for why it immediately commenced additional searching the day after the Discovery Conference. Notably, every document Plaintiff produced on September 30, 2022 predates the September 28, 2022 Discovery Conference, and most of the results significantly predate the May 14, 2022 search conducted by Plaintiff. Plaintiff has not offered any explanation regarding why the documents were not gathered by Plaintiff during the May 14th search. Plaintiff's decision to run a new search the day after the Discovery Conference demonstrates that Plaintiff believes it can circumvent its discovery obligations and create a moving target with respect to documents it intends to rely on to support its claims by classifying previously unproduced documents as the products of a "new search."

During the Parties' November 2, 2022 conferral call, Defendants asked Plaintiff to withdraw the six documents wrongfully produced on September 30, 2022 and to agree not to run additional Internet searches for historical documents that predate the Discovery Conference. Defendants stated they understood the Court's ruling at the Discovery Conference to limit Plaintiff's production under RFP Nos. 5, 6, 7, 8, 9, 16, and 18 to documents that came to Plaintiff through Defendant's production, through a third-party subpoena, or through an internet search for documents created after September 28, 2022. On November 11, 2022, Plaintiff responded by

13

stating that, under its understanding of the Court's order, "Crocs cannot agree to any date cutoff of evidence of third-party consumer confusion that is or was previously posted on the internet by third-parties and is not currently within Crocs' possession or knowledge." *See* Ex. 31 at 1.

Under Plaintiff's approach, it is entitled to use any responsive documents "discovered" during a post-September 28 search. In fact, Plaintiff has already done this very thing. Among the documents produced on September 30, 2022 are reviews from Costco.com, nearly all of which predate September 28, 2022. *See* Ex. 30. Although Plaintiff claims it "discovered" the documents on September 29, 2022, it knew of the documents as early as September 19, 2022, when it produced its Responses and Objections to Defendants' Interrogatories Nos. 9-15 and 21-22. Under Interrogatory Nos. 14 and 15, seeking evidence of consumer confusion, Plaintiff wrote, "in March 2022, a consumer wrote a review on Costco.com after purchasing Joybees shoes, believing them to be a Crocs' product." *See* Ex. 32 at 24 & 32. On September 22, 2022, Defendants sent Plaintiff a letter saying the Costco review had not been produced and demanding it produce the missing review and, meanwhile, "direct[ly] quote [] the review." *See* Ex. 33 at 2.

Plaintiff failed to produce or quote the review prior to the Discovery Conference. Two days after the Discovery Conference, although it clearly had these reviews in its files, Plaintiff produced a copy it "discovered" during the search it ran the day after the Discovery Conference. Defendants confronted Plaintiff with this fact and asked if, given its interpretation of the Court's ruling that it could not produce anything that preexisted in its files prior to September 28, 2022, it would agree to withdraw the Costco.com review that clearly preexisted in its files. Plaintiff refused to so agree and also failed to explain why it produced the review as part of a "new search." Thus, Plaintiff will not even comply with its own interpretation of the Court's ruling.

14

Plaintiff clearly conducted Internet searches before and after the lawsuit was filed. Plaintiff *chose* only to save and/or produce a handful of the documents it located before the Discovery Conference. Allowing Plaintiff to "remedy" this deficiency by conducting "new searches" and trickling out documents after depositions prejudices Defendants' ability to litigate their defenses.

Defendants want to proceed with depositions to move the case along, and RFP Nos. 5, 6, 7, 8, 9, 16, and 18 seek information critical to Plaintiff's claims and Defendants' defenses. Various Joybees retailers have expressed apprehension about carrying Joybees' products during this litigation out of fear that Plaintiff will sue them. *See* Ex. 34 at 1. Everyday this case is dragged out by Plaintiff's delay is prejudicial to Defendants. Further, Plaintiff's violations of the September 28, 2022 Order are clearly willful given its failure to comply even with its own interpretation of the Order. Thus, Defendants seek an order striking the six documents produced on September 29, 2022 and precluding Plaintiff from relying on any document not produced by Defendants or in response to a subpoena that pre-dates the September 28 Discovery Conference.

WHEREFORE, Defendants respectfully request that this Court enter an Order granting their Motion for Fed. R. Civ. P. 37 Sanctions against Plaintiff Crocs, Inc.

Respectfully submitted this 30th day of November, 2022.

KUTAK ROCK LLP

*s/ Chad T. Nitta*
Chad T. Nitta
Shelby L. Morbach
1801 California St., Suite 3000
Denver, CO 80202
Tel: 303-297-2400
chad.nitta@kutakrock.com
shelby.morbach@kutakrock.com
*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2022, I electronically filed the foregoing **DEFENDANTS' MOTION FOR FED. R. CIV. P. 37 SANCTIONS AGAINST PLAINTIFF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Suneeta Hazra
Adrienne Boyd
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
Tel: (303) 863-1000
Suneeta.Hazra@arnoldporter.com
Adrienne.Boyd@arnoldporter.com
*Attorneys for Plaintiff*

Jonathan K. Cooperman
Anne-Marie Mitchell
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
jcooperman@kelleydrye.com
amitchell@kelleydrye.com
*Attorneys for Plaintiff*

*s/ Chad T. Nitta*
Chad T. Nitta
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel:  303-297-2400
chad.nitta@kutakrock.com

16