IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02859-GPG-SBP

CROCS, INC.,

        Plaintiff,

v.

JOYBEES, INC., and
KELLEN McCARVEL,

        Defendants.

**PLAINTIFF CROCS, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS [ECF NO. 194]**

Plaintiff Crocs, Inc. ("Crocs") respectfully requests that Defendants' Motion for Sanctions for Violation of the Protective Order (ECF No. 194) ("Mot." or "Motion") be denied because, as discussed further below, Defendants' claims of violations have no basis.

**I.     INTRODUCTION**

After months of refusing to produce documents and removing responsive email attachments, Joybees finally produced a trove of new stolen Crocs documents and other evidence showing that Joybees used and directly copied Crocs's highly confidential manufacturing standards. This theft, previously unknown to Crocs, involved multiple persons stealing Crocs manufacturing materials and providing them to Joybees and its CEO Kellen McCarvel (together, "Defendants").[1] Crocs is seeking redress for this theft of Crocs's proprietary information in a new

---

[1] A more fulsome description with examples of Defendants' theft is provided in Crocs's pending motion to consolidate cases. ECF No. 197 at 5-8.

complaint because this case has been pending for some time and moving to amend to add new claims would threaten to derail and delay it yet further.

Nevertheless, without any applicable legal authority, Defendants request terminating sanctions to prevent Crocs from suing Defendants for new, and still ongoing, theft of trade secrets. Defendants cloak their request as a protective order violation but do not identify any Joybees confidential information they claim Crocs improperly disclosed in the new complaint. Indeed, Defendants have not even attempted to restrict any portion of the complaint, thus conceding that none of it improperly discloses confidential information.[2] Instead, Defendants claim that, because Crocs discovered the ongoing theft in the course of discovery in this matter, the Protective Order here immunizes Defendants from Crocs seeking relief for this theft in a new complaint.

Defendants are wrong. Both the plain language of the Protective Order and relevant authority establish there is no violation. It is simply not true that a party is unable to seek new relief based on information learned in discovery. Nor does the Protective Order state that a party or its counsel may not consider discovery materials when taking steps to protect that party's rights. In sum, Defendants cannot use the Protective Order as a shield to immunize them from new acts of trade secret theft.

The Protective Order protects sensitive business information from public disclosure or misuse in an adversary competitor's business and prohibits the disclosure of such information to the public or unauthorized persons. But it does not protect any and all information. The first page

---

[2] Crocs does not concede that there is any legitimate Joybees confidential information at issue. Instead, the only HC-AEO information in the stolen documents is Crocs's proprietary manufacturing standards. Defendants designated documents reflecting Crocs's HC-AEO information as Defendants' own HC-AEO information, and now rely on their designation of stolen Crocs information to bar Crocs from seeking relief.

states that the "Order does not confer blanket protections," and only guards against "public disclosure and use" of "the limited information or items that are entitled to confidential treatment under the applicable legal principles." Defendants' interpretation writes this provision out of the Protective Order, as they argue—with zero legal support or authority—that *any* document or information produced in discovery in this lawsuit is prohibited from even being considered by counsel in a separate proceeding.

Perhaps recognizing that their argument goes too far, Defendants accede that the Protective Order allows Crocs to seek redress for Joybees's actions, but that the Protective Order only allows that relief to take the form of a motion to seek leave to amend in this case. But this argument establishes that Defendants have no basis for sanctions. There is no dispute that Crocs did not quote, summarize, or otherwise disclose any confidential information at all here. The complaint simply recited how Joybees stole and used Crocs's confidential information to gain an unfair competitive advantage. And, without any such disclosure, there is no substantive difference between filing a new complaint and filing a motion for leave to amend an existing complaint, except that requiring a motion for leave to amend works a procedural and substantive prejudice on Crocs, the party seeking to protect its rights, because it affords Joybees the opportunity to oppose the amendment on grounds not available to it otherwise.

There is no basis at all to conclude that the Protective Order in this matter works such a substantive prejudice on a party who finds evidence of wrongdoing. This is why courts construing similar orders have held that "use" of a confidential document means actually revealing the confidential information in it, such as by marking the document in a deposition or filing it publicly, acts that reveal the confidential information in such documents. Courts recognize, however, there

are other acts, such as the filing of the claims here, where a party's knowledge of documents does *not* disclose confidential information, and thus does *not* violate the Protective Order.

Finally, Defendants have not suffered any cognizable harm. They claim, without substantiation, that the new complaint resulted in bad press and customer inquiries. But, if permitting an amended complaint is acceptable to Defendants, then any bad press is because of their bad acts, not filing a new legal claim. Regardless, Defendants' complaints of bad press are not competitive harms covered by the Protective Order.

Defendants are not seeking to protect confidential information, but are instead asking the Court for immunity for their theft of Crocs information solely because Crocs learned of it late in the discovery process due to Defendants' own dilatory tactics. Defendants are not entitled to any remedy, let alone the extraordinary remedies they seek, and Crocs respectfully requests that the Motion be denied.

## II.     FACTUAL & PROCEDURAL BACKGROUND

In October 2021, Crocs filed this lawsuit after McCarvel left his midlevel management position at Crocs, taking with him thousands of proprietary documents—including marketing plans, financial metrics, and customer lists all containing Crocs's confidential information—and used that information to launch Joybees, a knockoff shoe company. ECF No. 1. Given the nature of the lawsuit, Crocs had a strong interest in a Protective Order that would prevent Defendants from continuing to use Crocs's proprietary information to promote and sell Joybees brand footwear.

On January 11, 2022, the parties stipulated to the Protective Order, which states, in relevant part, that the Order's protection against "public disclosure and use extends only to the limited

information or items that are entitled to confidential treatment under the applicable legal principles," and "does not confer blanket protections." ECF No. 30 at § 1.Under the Protective Order, the parties defined "Confidential" information as "non-public, confidential, proprietary, or sensitive research, know-how, or development of technical, personal, business, financial or commercial information, or other information otherwise covered by a legitimate right or interest of privacy . . . ." *Id.* at § 2.2. If disclosure of the information to the public or unauthorized persons would cause a significant competitive harm, the information could qualify as "Highly Confidential — Attorneys' Eyes Only" ("HC-AEO") information, which the parties agreed would include "trade secrets, future business plans, marketing research and strategy, … and technical materials used solely for internal purposes in connection with development, production, engineering, or sales training." *See id.* at § 2.7. Information meeting the definitions of either Confidential or HC-AEO would be considered "Protected Material." *Id.* at § 2.14.

For well over a year, Defendants sat on the documents that evidenced their new trade secret theft, and only finally surrendered them when repeatedly ordered to do so. Specifically, Defendants claimed that post-2020 documents were irrelevant because Joybees had "consistently told its employees and contractors that they are not to use Crocs documents in their work with Joybees." ECF No. 197-20 at 2. The Court disagreed. In a Minute Entry, on March 20, 2023, the Court ordered Defendants to expeditiously produce all non-privileged documents containing the term "Crocs," and warned that Defendants' relevance objections would no longer be tolerated.

The Court repeated that Order not even two weeks later, when it became clear Defendants were dragging their feet. On April 5, 2023, the Court ordered Defendants to conduct a forensic collection and produce WeChat messages by April 21. ECF No. 133. Finally, on May 1,

Defendants produced screenshots that McCarvel captured from the WeChat application on his cellphone, but Crocs's efforts to obtain all the relevant WeChat messages in a proper format remain ongoing. Additionally, Defendants' productions were incomplete and missing email attachments. But, in order for Crocs to obtain the documents, Defendants required Crocs to identify each unproduced email attachment and request them by name.[3]

Defendants' productions from March to May 2023 revealed they were continuing to steal Crocs trade secrets.[4] Document after document revealed a prolonged scheme to copy, in as much detail as possible, the proprietary specifications and standards that Crocs uses to produce the materials in its footwear. *See* ECF No. 197 at 5-8. A screenshot confirmed that Defendants were aware of the confidential nature of this information from the very beginning. ECF No. 197-12. The documents for the 2021 time period, which Crocs had not seen before, were particularly incriminating. They showed Joybees ramping up production faster than it would have been able to do on its own by implementing exact copies of Crocs's material specifications and other standards. *See, e.g.*, ECF Nos. 197-14 to 197-19.

The narrow fact discovery window remaining in this case, and the long pendency of the claims regarding the Kellen McCarvel theft, meant Crocs had to choose between delaying this case

---

[3] Defendants seek to characterize Crocs's requests for missing documents, including an attachment called "Material Performance Standards," as proof that Crocs was secretly seeking discovery in order to launch a whole new lawsuit. Mot. at 7. The conspiracy theory does not work. Crocs requested the document because Defendants were ordered to produce all "Crocs" hits, and a produced email exchange indicated that the missing document *contained the Crocs logo*. ECF Nos. 197-18; 197-19. This was one of many missing documents Crocs had to request by name after Joybees chose not to produce them.

[4] Defendants' list of Joybees documents they claim support Crocs's new allegations confirms this timeline, since with the exception of just one document, each of the other several dozen documents in that list were produced on April 21, 2023 or later. *See* Mot. at 5-7.

even further, to Joybees's benefit, for an uncertain amendment, or filing claims in a separate matter, which would have been a necessity if an amendment here had been denied leave. Crocs concluded, as was its right, that it was better to file a new case and move to consolidate. Perhaps more importantly, setting aside Defendants' bare assertions to the contrary, no litigant is required to seek leave to amend before filing a new suit. Thus, on July 6, 2023, to ensure that Crocs would be able to vindicate its rights in its valuable trade secrets and proprietary specifications information, Crocs filed its new complaint. ECF No. 194-2.

It is the new lawsuit based on newly discovered theft of trade secrets—that both parties agree did not disclose any confidential information—that Defendants claim violates the Protective Order and demands sanctions. But, Defendants have not moved to restrict the 2023 complaint or even identified any confidential document inappropriately referenced in the complaint. Their Motion simply asserts that the new complaint is a per se violation.

### III. ARGUMENT

#### A. Defendants Fail To Identify A Violation Of The Protective Order

Courts routinely recognize that the purpose of a protective order is to protect against unauthorized disclosure of confidential information to competitors and the public, not to immunize a disclosing party from future litigation. *See, e.g.*, *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993) ("Privacy of proprietary information, not immunity from suit, was the legitimate purpose of the protective order."); *Feed.ing BV v. Principle Solutions, LLC*, No. 14-C-1241, 2015 WL 136402, at *3 (E.D. Wis. Jan. 8, 2015) (similar); *see also Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022) (noting "decisions holding that the use of information gained by an attorney under a protective order in

one case may appropriately be used by the same attorney to develop a strategy applicable to a second action"); *Arconic Inc. v. Univ. Alloy Corp.*, No. 1:15-cv-01466-ELR-RGV, 2018 WL 4839225, at *2 (N.D. Ga. July 31, 2018) (permitting use of protected documents produced in one suit "as a basis for filing a second suit"); *Suture Exp., Inc. v. Cardinal Health 200, LLC*, No. 12-2760-DDC, 2015 WL 5021959, at *4-5 (D. Kan. Aug. 24, 2015) (parties are not required "to turn a blind eye to potential claims"). Yet despite this canon of caselaw, Defendants ask this Court to find that the Protective Order in this case does immunize them from further claims.

### 1. Crocs's new complaint does not divulge confidential information

Defendants concede that Crocs has not divulged any of their confidential business information in its new complaint or elsewhere. This is fatal to Defendants' request for a finding that Crocs committed a violation of the Protective Order, let alone one warranting sanctions.

Nowhere in the Motion do Defendants assert Crocs disclosed confidential information in its new allegations. Likewise, Defendants' letter demanding that Crocs withdraw its new complaint did not identify any portion of the complaint quoting, summarizing, discussing, or otherwise disclosing their confidential information. Declaration of Jonathan K. Cooperman in Support of Crocs's Opposition to Defendants' Motion ("Cooperman Decl."), ¶ 2 & Ex. 1. Nor could they have. The only confidential information referenced belonged to Crocs. *Id.*

Instead, Defendants identify several vague categories of HC-AEO documents or information they assert Crocs summarizes or relies upon in its new complaint. Mot. at 11. They refer to "detailed descriptions of documents, actions, and communications" and "detailed, sensitive business information" (*id.* at 10-11), but Defendants do not offer any detail themselves because there is none that would meet the definition of confidential information under the Protective Order

or the requirements for restriction under Local Rules. *See* ECF No. 30 at §§ 2.2, 2.7; D.COLO.LCivR 7.2(e). Names of former Crocs employees are not HC-AEO. Nor are dates. Similarly, while the Motion claims that the information summarized in the new complaint includes "details of Joybees's specifications," Defendants do not identify any such details as being publicly disclosed because Crocs did not put any such details in the complaint.[5] Crocs merely references the fact that Joybees created "specifications" that directly copied specifications that are proprietary to *Crocs*, not Joybees.[6] Defendants offer no legal support for their contentions that Crocs violated the Protective Order by relying on knowledge of documents showing that Defendants stole *Crocs's* HC-AEO information, but not disclosing any such information.

That the new Complaint does not, in fact, disclose any Joybees confidential information has also been conclusively established by Joybees's own actions. Specifically, the 14-day period to seek restriction under Local Rule 7.2(e) for any content in the new Complaint has come and gone with no request for restricted access by Defendants. Nor did Defendants seek to restrict the copy of the new complaint (or anything) attached to their Motion, as Crocs is the only party with relevant HC-AEO information. *See* ECF No. 209. All of the motion practice Joybees references in its Motion regarding Crocs (*see, e.g.*, Mot. at 11) involved Crocs seeking redactions for information it considered confidential. Joybees has filed no such motion, much less identified any

---

[5] The details of the specifications that Joybees stole and is using are actually Crocs confidential information, hence the lawsuit. *See* ECF No. 209 at 2-4.

[6] Demonstrating that mere references to HC-AEO documents and descriptions of the non-confidential information contained therein *do not* violate the Protective Order, the publicly-filed version of Joybees's antitrust counterclaims makes similar references to Crocs's own HC-AEO documents and the metadata from them. *See, e.g.*, ECF No. 187 at 37 ¶ 55 (referring to documents produced by Crocs that allegedly show Crocs intimidating retailers); *id.* at 43 ¶ 69 (alleging, based on review of Crocs documents, that Crocs asked retailers to stop selling Joybees as a condition of carrying Crocs).

specific information in the complaint that is, in fact, confidential. Having chosen not to take any such steps, Joybees must now concede that no disclosure of confidential information occurred.

Since they cannot actually rely on any public use or public disclosure of **confidential** information, Defendants argue that all information produced in discovery should be restricted, regardless of confidentiality. Mot. at 9 (arguing that any outside use of "documents or information produced by Joybees" violates the Protective Order). But such a position, as set forth further below, has been rejected by courts. *Arconic*, 2018 WL 4839225, at *2 (modifying restriction on use of "[a]ll information … produced or discovered in this litigation, regardless of whether designated confidential").

As an alternative, Defendants repeatedly state that Crocs "relied upon" or "considered" Joybees's documents. Mot. at 2, 7, 8 n.1, 9, 10, 15. But, the Protective Order does not bar a party from "relying upon" or "considering" information in discovery for purposes of vindication of rights in a legal forum. Indeed, that is the purpose of the discovery subject to the Protective Order. The Protective Order instead prohibits the *disclosure* of confidential information and documents to unauthorized persons and the public. PO §§ 1, 2.7, 7.1, 7.2, 7.3, 10; *see also Static Media*, 38 F.4th at 1048 (holding that "use" "implies disclosure to the public or those not signatories to the protective order"); *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 434-35 (D. Neb. 2008) ("reliance" on protected documents in separate proceeding did not violate protective order because references to documents did not disclose confidential information). The fact that Defendants have not and cannot identify any such actual disclosure is fatal to their Motion.

### 2. Crocs did not improperly use or disclose HC-AEO documents produced by Defendants

Since they cannot identify any improper disclosures in Crocs's new complaint, Defendants argue that *any* use outside this lawsuit of *any* document or information produced in this lawsuit is prohibited by the Protective Order. Mot. at 9-10. Notably, Defendants cite no case law to support their novel interpretation. The relevant legal authorities, as well as the plain language and purpose of the Protective Order, reveal that Defendants are wrong.

As a court in this District explained: "[t]he fact that a party knows that certain documents exist, and uses that knowledge [for other purposes] is insufficient to establish that the party 'used' those specific documents *themselves* or the information therein." *City of Fort Collins v. Open Int'l, LLC*, No. 21-CV-02063-CNS-MEH, 2022 WL 7582436, at *4-5 (D. Colo. Aug. 16, 2022) (emphasis in original). What matters is whether a party has "used any of the confidential content within those documents." *Id.* at 5 (quoting *Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, No. 14-cv-1296-JPS, 2016 WL 1719657, *4 (E.D. Wis. Mar. 16, 2016)); *see also Streck*, 250 F.R.D. at 435 ("general reference to protected documents" did not constitute "use" because plaintiff did not disclose confidential information). Thus, courts have permitted documents produced in one case to form the basis of another lawsuit, even when they were produced under a more restrictive order than the one here. *Arconic*, 2018 WL 4839225, at *2; *see also Static Media*, 38 F.4th at 1048.

Defendants' claim that the HC-AEO documents produced by Joybees[7] "form the *core* of Crocs's allegations," Mot. at 7, does not equate to "public disclosure or use" because Crocs's

---

[7] Defendants note "Crocs has not challenged Defendants' designation of these documents produced as HC-AEO." Mot. at 10 n.2. But the proper designation *is* HC-AEO. The documents contain HC-AEO information, but it is proprietary to *Crocs*, not Joybees. *Supra*, p. 9.

allegations are based on mere *knowledge* about documents, and there is no actual use or disclosure of the documents themselves or the confidential information in them. *City of Fort Collins*, 2022 WL 7582436, at *4-5. Courts have rejected such claims for good reason; parties could not meaningfully litigate a case where counsel might be required to screen off knowledge of the existence of documents from another case. *See, e.g.*, *Royal Park Investments SA/NV v. Deutrsche Bank Nat'l Trust co.*, 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016) (protective order could not prohibit "use" of materials in other litigation "[p]articularly where, as here, two lawsuits have been filed by the same plaintiff, in the same court, on the same legal theories, against two defendants who already share the same counsel"). Likewise, courts have rejected claims that a party "used the discovery process in [an] earlier litigation to obtain the information upon which [a second] action is predicated" where counsel has not disclosed confidential information to unauthorized parties. *Sumitomo Elec. Indus., Ltd. v. Corning Glass Works*, No. 86 CIV 9543 (WK), 1988 WL 137692, at *1 (S.D.N.Y. May 31, 1988).

Defendants cite just <u>one</u> case involving a protective order violation, but that case involved an actual public disclosure of confidential materials. Mot. at 8 (citing *Digital Advertising Displays, Inc. v. Newforth Partners, LLC*, No. 12-cv-00682-WJM-MEH, 2014 WL 128010, at *2 (D. Colo. Jan. 10, 2014)). In that case, a party filed documents containing confidential information onto the public docket, and then "exhibited a disinterested attitude in correcting the public disclosure of the confidential documents." *Id.* at *3. Because Defendants' allegations involve none of the same facts, that case is inapposite here.[8]

---

[8] While this case is not relevant to Crocs, it is remarkable that Defendants have engaged in the very same conduct deemed sanctionable in the only case they cite analyzing a protective order violation. Twice in this lawsuit, Defendants have filed Crocs's HC-AEO information onto the

The other cases that Defendants cite fare no better. Two cases did not even involve protective orders. *See* Mot. at 9 (citing *Villanueva Echon v. Sackett*, 809 F. App'x 468, 472 (10th Cir. 2020), *E. Colorado Seeds, LLC v. Agrigenetics, Inc.*, No. 19-CV-01885-LTB-KMT, 2020 WL 2769792, at *2 (D. Colo. May 28, 2020)). The only other was a case in which a protective order was *issued*, not violated. *Id.* at 8 (citing *Garcia v. Dillon Companies, Inc.*, No. 05-cv-02339-MSK-MEH, 2006 WL 3512049, *2 (D. Colo. Dec. 6, 2006)).

### B. Defendants Fail To Assert A Competitive Harm

In addition to failing to identify a violation of the Protective Order, Defendants fail to assert any recognized harm. *See DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1372 (Fed. Cir. 2021) ("As required by the Supreme Court in *Nixon*, there must be some threatened harm to 'a litigant's competitive standing'") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). For one, press coverage does not constitute a harm—especially when the press coverage is about Joybees's admitted use of stolen Crocs manufacturing information. Media attention is incidental to commercial litigation, as well as routine. Defendants offer no authority establishing a remedy for harms caused by unfavorable press coverage. And, Crocs is not required to assert claims in a manner intended to minimize publicity.

Even if bad press did constitute a harm, Defendants do not establish it by citing only to a single, heavily redacted email. Mot. at 12-13. The press was already following litigation between Joybees and Crocs, even appearing at discovery hearings. Cooperman Decl., ¶ 3 & Ex. 2. Thus the claim that "Joybees has suffered business injuries" as a result of Crocs filing its new claims in

---

public docket and thereafter failed to move expeditiously in mitigating the disclosure. *See* Cooperman Decl., ¶ 4 & Ex. 3; ECF No. 178.

a separate lawsuit as opposed to filing new claims in this lawsuit is implausible. *See* Mot. at 14. Defendants suggest that Crocs piggybacked on Joybees's filing of its Amended Counterclaims, seeking to drum up press coverage, but the timing is immaterial, as are Crocs's motivations. *See City of Fort Collins*, 2022 WL 7582436, at *5 (explaining that "motivations are not relevant to the Court's inquiry").

Likewise, Crocs's decision to file a new complaint instead of moving for leave to amend does not create a legally cognizable harm. *See AT&T Mobility, LLC v. Digital Antenna, Inc.*, No. 09-60639-CIV, 2010 WL 3608247, at *1 (S.D. Fla. Sept. 9, 2010) (holding that the parties had "the right to file a new lawsuit" in lieu of adding new claims). There is also no requirement that Crocs risk suffering prejudice in the current litigation just to preserve its rights. To the contrary, courts recognize a First Amendment right to bring new litigation, and Defendants have not identified a single case holding otherwise. *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) ("It is well established that the right to file a legal action is protected under the First Amendment."). Defendants are simply incorrect that the Protective Order can immunize them from belatedly disclosed acts of trade secret theft. *See Dual-Deck*, 10 F.3d at 695.

### C. Defendants Are Not Entitled To Relief

Having failed to establish a violation of the Protective Order or another legally cognizable injury, Defendants are not entitled to any legal remedy, let alone the extraordinary ones they request. Mot. at 14-15; *see De Simone v. VSL Pharms, Inc.*, No. TDC-15-1356, 2022 WL 13955292, at *1 (D. Md. Oct. 24, 2022) (rejecting request for discovery in aid of a claim of contempt based on filing of confidential document in other lawsuit because movant had "not made the necessary showing that it [had] been harmed by the alleged violation of the Protective Order").

And, they make no effort to justify their remedy requests. While Defendants request a special master, they do not explain how such a request meets Fed. R. Civ. P. 53 requirements or how the special master could investigate Crocs work product. Indeed, Defendants fail to cite *any* authority, Mot. at 14-15, including the relevant factors that courts in the Tenth Circuit consider before issuing dispositive sanctions such as dismissal with prejudice. *See EEOC v. Chris the Crazy Trader, Inc.*, No. 21-cv-02666-NYW-SKC, 2023 WL 4237086, at *4 (D. Colo. June 28, 2023) (discussing the *Ehrenhaus* factors).

## IV.   CONCLUSION

For the foregoing reasons, Crocs respectfully requests that the Court deny the Motion.

Dated:  Aug. 8, 2023                              Respectfully submitted,

*/s/ Jonathan K. Cooperman*

**KELLEY DRYE & WARREN LLP**

Jonathan K. Cooperman
Brianna J. Santolli
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: JCooperman@KelleyDrye.com
Email: BSantolli@KelleyDrye.com

**ARNOLD & PORTER KAYE SCHOLER LLP**

Suneeta Hazra
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
Tel: (303) 863-1000
Fax: (303) 863-2301
Email: Suneeta.Hazra@arnoldporter.com

        Sean M. Callagy
        Isaac L. Ramsey
        Three Embarcadero Center, 10th Floor
        San Francisco, CA 94111
        Tel: (415) 471-3100
        Fax: (415) 471-3400
        Email: Sean.Callagy@arnoldporter.com
        Email: Isaac.Ramsey@arnoldporter.com

        *Counsel for Plaintiff Crocs, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of August 2023, the foregoing **PLAINTIFF CROCS, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS [ECF NO. 194]** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jonathan K. Cooperman*
Jonathan K. Cooperman